Martha G. **WHITFIELD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21465.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1967.

---

Donald A. Jackson, Kimble, Mac-Michael, Runner & Jackson, Fresno, Cal., for appellant.

William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., trial attorney, for appellee.

Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Los Angeles, Cal., Ronald S. Morrow, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JOHNSEN,* BARNES, and ELY, Circuit Judges.

ELY, Circuit Judge:

In a jury trial, appellant was found guilty of having fraudulently attempted to evade or defeat the payment of federal income taxes, an offense proscribed by 26 U.S.C. § 7201. She appeals from the judgment of conviction, invoking the power of review conferred upon us by 28 U.S.C. § 1291.

The indictment consisted of two counts. The Government undertook to prove its case by the "net worth" method.

It contends that the proof established that the appellant's taxable income was $32,253.77 in 1958 and $13,373.49 in 1959. In her tax returns, appellant had reported that there was no taxable income in 1958 and that there was only $5,115.02 in taxable income for the year 1959.

█ The taxing authorities had been informed of the possibility that appellant had not been forthright in meeting her tax responsibilities to the United States, whereupon, on February 10, 1961, appellant was interviewed by an agent of the Internal Revenue Service. The interviewing agent displayed his credentials and advised appellant, in part, as follows:

> "[A]ccording to the federal laws of these United States, 'you cannot be required to furnish any information that may incriminate you in any way' * * *. 'It is my duty to warn you that in the event that any action is taken against you in a Federal Court that any information or documents you furnish can be [used] against you in any such proceedings' * * *. [You can] refuse to answer any or all * * * questions."

The Government admits that its agent did not advise appellant of her right to have counsel in attendance during the interrogation. The district judge admitted evidence of information which appellant had supplied and statements which she made to the agent following the admonition. She now contends that this evidence was inadmissible because of the agent's failure to communicate advice pertaining to the right of counsel and that her motion to suppress it should have been granted. She challenges the soundness of our decision in Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), cert. denied, 384 U.S. 1011, 86 S. Ct. 1915, 16 L.Ed.2d 1017, rehearing denied, 385 U.S. 891, 87 S.Ct. 15, 17 L.Ed. 2d 122 (1966), followed in Selinger v. Bigler, 377 F.2d 542 (9th Cir. 1967). While our opinion in *Kohatsu* has been criticized (see United States v. Turzyn-

---

* Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

ski, D.C., 268 F.Supp. 847 (N.D.Ill. 1967)), we do not here find it necessary to reexamine it. The advice, including a warning which the agent communicated to the appellant, most assuredly met with all requirements which, in 1961, were thought to exist. While it did not completely and precisely measure up to that required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), its only deficiency, failure to include information as to the right of counsel, affords appellant no valid basis for relief. Her trial commenced on October 26, 1965, before the opinion was issued in *Miranda* on June 13, 1966. In the light of this sequence of events, appellant's contention is foreclosed by Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, rehearing denied, 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121 (1966).

■ Appellant's principal argument is related to her contention that the Government's evidence was insufficient to support conviction. We have reviewed the record, as we are obliged to do in "net worth" cases, "bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." Holland v. United States, 348 U.S. 121, 129, 75 S. Ct. 127, 132, 99 L.Ed. 150 (1954). The appellant urges that, under *Holland,* the Government was required to prove, with certainty, that all income which it claimed was unreported was derived from a certain source. Appellant and her deceased husband were the owners of a 14-unit motel to which were added eight units in 1951 or 1952 and a swimming pool and cocktail lounge in 1958 and 1959. This facility was the source from which

the Government claimed it likely that the alleged unreported income was earned. If, as contended by appellant, the prosecution was compelled to relate all the unreported income precisely to the motel operation, then employment of the "net worth" method of proof would have been unnecessary. In *Holland,* the Supreme Court remarked, "Also requisite to the use of the net worth method is evidence supporting the *inference* that the defendant's net worth increases are attributable to currently taxable income." 348 U.S. at 137, 75 S.Ct. at 136. (Emphasis supplied.) It added, "But proof of a likely source, from which the jury *could reasonably find* that the net worth increases sprang, is sufficient." 348 U. S. at 138, 75 S.Ct. at 136. (Emphasis supplied.) From the emphasized words, it seems clear to us that in the presentation of its evidence of a likely source of income which should have been reported, the Government met the burden required by *Holland.* In defense, the appellant, who testified in her own behalf, contended that her business was incapable of producing the income which the Government charged to have been unreported. She insisted that her husband had concealed $100,000 in a tin box and that, upon his death in 1948, the money had come into her possession.[1] Her credibility was severely shaken. The records of her bank accounts were irreconcilable, and, after her first interview with the revenue agent, she destroyed motel reservation cards which might have either supported or undermined her contention that her business enterprise could not have produced the amounts of unreported income claimed by the Government to have been earned in 1958 and 1959.[2] In the beginning, the appellant

1. The appellant conceded that the Government's computations of her net worth were accurate, although she, of course, disputed the Government's opening figure of cash on hand.

2. Several witnesses testified as to their observations relating to the extent of the motel's occupancy during certain periods of the years in question. One such wit-

ness, offered by appellant, had been a guest at the motel on one occasion during 1958 and on two occasions in 1959. His observation of the presence of from three to ten automobiles on these rare occasions, while material, does not, in our view, significantly enlighten the whole picture. Neither does similar testimony presented by the Government.

told the investigating agent that there had been no large amounts of cash on her premises during the period from 1948 through 1955 and that, if there had been any cash whatsoever on hand during that period, the amount would have been no more than nominal. She stated that her only inheritance was from her husband, and she expressed her opinion that it was "unsafe" to keep large amounts of cash on hand. Afterward, when she knew that the investigation was underway and had consulted with her accountant, she first revealed her contention as to the existence of a cash hoard, stated that her deceased father had made large monetary gifts to her during his lifetime, and remarked that her husband had been distrustful of banks. In refutation, the Government offered proof that appellant's father had been supported by his county's relief fund throughout the period from 1946 to 1958, that he had no assets in those years beyond $125, and that, in a 1947 application for welfare benefits, he had represented that his income was $60 per month.[3] Moreover, the Government proved that appellant visited her bank two or three times each week, exchanged small checks and currency of small denominations for $20, $50, and $100 bills, and seldom made a bank deposit. A bank teller testified that the appellant, as she made these exchanges, departed from the bank each week with between $900 and $1500 in bills of the larger denominations. Opposing appellant's representation that her deceased husband had distrusted banks, the Government presented bank statements revealing that he did in fact maintain bank accounts during his lifetime and that the deposited amount in one of his savings accounts had reached $10,000.

We think we have reviewed so much of the evidence as is necessary to demonstrate that the jury was entirely justified in rejecting the factual defense which was presented. In a case such as this, wherein the prosecution proceeds under the "net worth" method of proof, the district judge is also required to scrutinize the evidence with the utmost care. In submitting the case to the jury and in fixing punishment, he was apparently convinced, as we are convinced, that the appellant undertook to cheat her Government and that the jury ascertained the truth.

Affirmed.

---

3. In 1958 the appellant had made a statement that she was unemployed and unable to assist her father in securing nursing care. She had also represented that she was unable to contribute toward her mother's support because she had no income with which to do so. In view of her representation that her father had given her large amounts of money, appellant is in no position to contend that this damaging evidence was uninvited, and she has not done so.