**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sam MITCHELL and Vera L. Mitchell,
Defendants-Appellants.**

**No. 16727.**

United States Court of Appeals
Seventh Circuit.
July 11, 1969.

**182**

Anna R. Lavin, Chicago, Ill., for appellants.

Mitchell Rogovin, Ann Belanger, Attys., Dept. of Justice, Tax Division, Washington, D.C., Thomas A. Foran, U. S. Atty., Chicago, Ill., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Attys., Department of Justice, Washington, D.C., Charles A. Boyle, Asst. U. S. Atty., of counsel, for appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and ESCHBACH, District Judge.[1]

SWYGERT, Circuit Judge.

The Government brought this action to reduce to judgment certain assessments of cabaret excise taxes imposed by Section 1700 of the Internal Revenue Code of 1939 that were claimed to have arisen from taxpayer Sam Mitchell's activities during the period 1947 through 1950. Additionally, federal income tax liability for 1948 and 1949 against Sam Mitchell, individually, and for 1950 against Sam and his wife, Vera Mitchell, was averred. The complaint prayed that a certain transfer of real estate by the taxpayers be set aside as fraudulent against the Government and the property ordered sold in satisfaction of tax liens.

The case was originally tried before Senior Judge Fred L. Wham, but, on account of his illness, it was reassigned to Chief Judge William J. Campbell of the Northern District of Illinois for his decision. Pursuant to a stipulation of the parties, Judge Campbell decided the case without further trial on the basis of counsel's briefs and the record. The district court's judgment directed that the United States recover $246,061.12 plus interest against Sam Mitchell; that the United States recover $34,034.41 plus interest against Sam and Vera Mitchell, jointly and severally; and that the conveyance of real property by Sam and Vera Mitchell on February 24, 1959 was void as to the United States; and that Vera Mitchell's assignment of her interest in that property was void as to the United States. It is an appeal from that judgment which is before us.

From the record and the findings of the district court, it appears the following facts occurred. Cabaret excise tax returns were filed each month during the years in question by Sam Mitchell as owner of two night clubs, the Riptide Club and the Little Club, located in Cal-

---

1. Judge Eschbach is sitting by designation from the Northern District of Indiana.

umet City, Illinois. Cabaret tax returns for the Riptide Club extended over a 48-month period from January 1947, through December 1950. Tax returns for the Little Club were filed during a 25-month period from December 1948, through December 1950. The information and amounts of tax submitted with each monthly return conformed with the records of the two clubs. The tax due was computed by totaling the month's receipts but excluding those receipts attributed to day sales and to evening sales when entertainment was not provided. The records of the Riptide Club indicate entertainers were contracted for, worked, and received wages covering many of the evenings in which the ledgers for cabaret tax purposes indicated there was no entertainment. Local newspapers continuously advertised entertainment every night at the Riptide Club, but no cabaret taxes were paid on receipts from many nights from January 1, 1947, through July 31, 1948.

From August 1948, through December 1950, the Riptide Club featured taxable entertainment each evening in the form of exotic dancing. Though cabaret income was reported and excise tax paid for each evening during this period, over one-half of the Club's revenue was taken in during non-taxable day sales periods according to Riptide records. The defendant Sam Mitchell testified that the day sales period would run normally from 6:00 a.m., when the Riptide opened, until 9:00 p.m. when entertainment started. This testimony was directly contradicted by the postman who delivered the mail to the Riptide. He claimed that during the period in question, the Riptide was often closed when he made the morning and afternoon mail deliveries.

The testimony revealed that a similar procedure was in operation at the Little Club. From December 1948, to September 1949, taxable entertainment was contracted for and appeared at the Little Club six days a week. Cabaret taxes were paid only for the weekend evenings. As in the case of the Riptide Club, during the years 1949 and 1950, the taxpayer reported that about one-half of the total receipts of the Little Club were earned during the non-taxable day sales hours. Again, the postman testified that he made morning and afternoon deliveries to the Little Club each weekday and that there were no customers in the club. Another witness stated that there were few customers in the Little Club as late as 9:00 p.m.

An Internal Revenue agent testified regarding his investigation into the clubs' operations. On the basis of his three-year inquiry, the agent concluded that the non-taxable day sales at the Riptide amounted to no more than $30 per day and at the Little Club to no more than $20 per day.

The district court found that the excise tax returns filed each month contained false information, either as to the number of evenings taxable entertainment occurred or the percentage of daily receipts attributable to day sales, that a clear case of tax fraud had been established and as a consequence the Government was entitled to fraud penalties on the excise tax liabilities. The court denied, however, the Government's claim to the extent that it included cabaret tax penalties and interest on alleged unreported sales.

The income tax deficiency asserted by the Government was based on a net worth analysis. Revenue agents testified that they conducted an investigation into Sam Mitchell's finances dating back to 1943 and that they had established December 31, 1947 as the starting point from which subsequent increases in assets could be measured. The agents' net worth computations were introduced as evidence. After the defendants' counsel stated that three items in the net worth statement were contested, two of the items were withdrawn and the alleged income tax deficiency was accordingly readjusted. The remaining disputed item concerned a $33,000 loan made to the taxpayer's brother during the year 1950.

The district court found that the Government's net worth computation established that the taxpayer and his wife had considerable taxable income in excess of that reported and that a probable source of the unreported income was his cabaret business. However, the court held that no fraud penalties would attach to the income tax deficiencies.

In 1959 while the taxpayers were administratively contesting the tax liabilities assessed in this case, they conveyed certain real estate to the Chicago Title and Trust Company, as Trustee, and named Vera Mitchell as the beneficial owner. Subsequently, she gratuitously transferred her beneficial interest to their son. The district court determined that the purpose of these transfers was to hinder, delay or defraud the United States in its effort to collect taxes due, held the transfers to be void and set them aside as to the United States.

■ The defendants' first contention is that the net worth theory was improperly applied in that there was no starting point from which to make a net worth computation and that in any case the Government failed to prove the Mitchells' unreported income. The record does not support this assertion. Harry Ansell, the Revenue agent who prepared the Government's net worth summaries, testified that on the starting point, December 31, 1943, the taxpayer had a net worth figure of $20,977.71. The assets and liabilities that were the basis of this determination were set forth in his summary. Throughout the case the taxpayer never alleged that he had any other assets or liabilities. Further, he disputed only one item in the final computation, the $33,000 loan in 1950. The cases cited by the taxpayer to support his position are distinguishable. In Phillips' Estate v. Commissioner of Internal Revenue, 246 F. 2d 209 (5th Cir.1957), a net worth computation in which neither the Commissioner nor the Tax Court made any finding relating to opening cash on hand was in issue. In light of the fact that the taxpayer's business produced cash profits and required large sums of cash to be kept on hand, the Fifth Circuit found no basis for the Commissioner's inference that the taxpayer's opening and closing cash positions were substantially the same. In the instant case, a specific cash on hand figure was included in the initial net worth computation. There is nothing inconsistent with the technique employed here and the essential requirements for net worth analysis set forth in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Taxpayer's argument that the Government failed to prove unreported income is not supported by the record. He bases his argument on the net worth figures contained in the Government's original schedule before they were recomputed to reflect the withdrawal of the two disputed items. The taxpayer has completely disregarded his personal expenditures for the years in question which must be added to the increases in net worth to reconstruct his income. Holland v. United States, 348 U.S. 121, 125, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The Government is not required to show the precise source of unreported taxable income, but only a source likely and capable of producing the income. United States v. Mackey, 345 F.2d 499 (7th Cir.1965). The Government not only demonstrated that the clubs were a probable source of unreported taxable income, but it also established that this income did not come from any non-taxable source. Either of these forms of proof is sufficient to support a net worth computed deficiency. United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). The taxpayer testified that his only source of income for the years in issue, aside from an oil interest, was his profit from the Riptide Club and Little Club operations. He also testified that he received no substantial gifts, no inheritance, and did not receive any insurance proceeds. Under these circumstances, our court has previously found a taxpayer to be liable. "However, defendant in this case did not

furnish any explanation which would attribute his increased net worth to other than taxable income. Defendant had the right to remain silent but he did so 'at his peril.'" United States v. Mackey, 345 F.2d 499, 506 (7th Cir.1965).

The defendants next argue that the excise tax was wrongfully and arbitrarily assessed. The record unequivocally demonstrates that prior to each club's conversion to nightly entertainment, the taxpayer's records falsely reflected that no taxable entertainment occurred on evenings when, in fact, taxable entertainment did occur. The uncontradicted testimony of a variety of performers as well as newspaper advertising evidence amply supports the conclusion that the taxpayer's records were false. Since book entries are merely evidentiary, Doyle v. Mitchell Bros. Co., 247 U.S. 179, 187, 38 S.Ct. 467, 62 L.Ed. 1054 (1918), having been shown to be false, the taxpayer's books are incapable of rebutting the Government's proof of fraud. Likewise, the testimony of former bartenders, the postman, and customers of the clubs clearly shows that the amount of receipts attributed to day sales was fraudulently overstated. The Government relied on more than the correctness presumption to support its allocation of total sales to day sales. The agent who investigated the clubs' operations testified to the reasonableness of the allocation. The facts disclosed by affidavits of many former employees and entertainers likewise corroborated the allocation.

The next contention raised by the taxpayers is that the presumption of correctness should not have operated here to sustain the Government's arbitrary assessment. We are of the view that the record supports the Government's determination of opening net worth and that the taxpayer has failed to show wherein the determination is arbitrary. The case cited by the taxpayer, Thomas v. Commissioner of Internal Revenue, 232 F.2d 520 (1st Cir.1956),

dealt with the presumption to be accorded a cash on hand figure that was without any support in the record. In light of the ample support for the asserted deficiencies in the record before us, the Thomas case has no application to this appeal.

The final argument advanced by the taxpayers is that the district court erred in finding that the transfer of real estate by the taxpayers to their son was void as being made for the purpose of defrauding and defeating the collection of taxes. Ill.Rev.Stat. ch. 59, § 4 (1967). The defendants admit that there was no consideration for the transfer from Vera Mitchell to their son on November 19, 1959. However, Sam Mitchell contends that the transfer of his interest to his wife on February 24, 1959 was not gratuitous. As consideration for this transfer of his interest, Sam Mitchell claims that his wife gave him the right of mortgaging the house and using the $8,000 proceeds to discharge existing tax liens against the property. Assuming this arrangement to be true, there was no valuable consideration to creditors. The result of the transaction was a mere substitution of creditors; the underlying $8,000 obligation was not discharged.

Even if the February 24, 1959 transfer is not voidable, the November transfer to the taxpayers' son is subject to the Government's tax lien since the federal income tax deficiency, which included a joint assessment against Sam and Vera Mitchell for the year 1950 was assessed on October 23, 1959. Thus, at that time a federal tax lien attached to all of the taxpayers' property pursuant to 26 U.S.C. § 6321. Consequently, one month later, when Vera Mitchell transferred the property to their son, he took subject to the Government's tax lien to the extent of the $58,365.29 assessment for 1950.

The judgment of the district court is affirmed.