UNITED STATES of America, Appellee,

v.

Angelo COSTANZO,
Defendant-Appellant.

No. 838, Docket 78–1043.

United States Court of Appeals,
Second Circuit.

Argued May 5, 1978.

Decided July 11, 1978.

John W. Condon, Jr., Buffalo, N. Y. (Condon & Sedita, P. C., Buffalo, N. Y., of counsel, Louis A. Haremski, Buffalo, N. Y., on the brief), for defendant-appellant.

William M. Skretny, First Asst. U. S. Atty., W. D. N. Y., Buffalo, N. Y. (Richard

J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y., of counsel), for appellee.

Before MOORE, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal by Angelo Costanzo from a conviction for income tax evasion. Appellant and his wife were named as defendants in an eight-count indictment covering the years 1968 through 1971. Counts I through IV charged them with evasion of their joint personal income taxes in the amount of $106,679.93, and Counts V through VIII charged them with the evasion of the corporate income taxes, in the amount of $114,621.11, of Costanzo's Bread, Inc., a corporation owned by the taxpayer. Appellant was engaged in a bakery business in corporate form, employing forty persons. It sold at wholesale and at retail and included a baked goods counter and a snack bar. The jury acquitted Mrs. Costanzo and returned a verdict of guilty on all counts against appellant.[1] We are asked to reverse the judgment of conviction, and to dismiss the indictment for insufficiency of evidence or to remand for a new trial because of alleged evidentiary errors. We affirm.

We view the evidence in a light most favorable to the Government. *United States v. Brawer*, 482 F.2d 117, 125 (2d Cir. 1973), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). The Government, employing the "net worth" method of proof, proved the taxpayer's unreported taxable income by showing that the increase in his net worth in the period from 1968 to 1971, plus his nondeductible expenses for those years, exceeded his reported taxable income and his nontaxable receipts. This familiar method of proving tax evasion has been approved by the Supreme Court. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). But in approving the use of the net worth method, the Court also recognized its potential

for mistake and abuse. *Holland, supra*, 348 U.S. at 124–29, 75 S.Ct. 127. Appellate courts have been specifically instructed to "review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." *Holland, supra*, 348 U.S. at 129, 75 S.Ct. at 132. We have accordingly reviewed the record. The taxpayer's principal points on this appeal raise questions about the Government's compliance with the requirements of the net worth method of proof. Though the charge to the jury in such cases is complex, no attack is made upon Judge Curtin's charge.

## I

### PROOF OF THE TAXPAYER'S OPENING NET WORTH

The taxpayer argues that the Government failed adequately to establish his net worth as of December 31, 1967, the opening date of the period. The Supreme Court emphasized the importance of proof of opening net worth in *Holland, supra*, 348 U.S. at 132, 75 S.Ct. at 134.

> "[A]n essential condition in cases of this type is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset."

The details of the Government's thorough and careful net worth investigation were related to the jury by the Government's witnesses. The Government established an opening net worth of $450,321.13 as of December 31, 1967. There is no merit in the taxpayer's argument that this opening net worth figure was fatally flawed by a failure to take into account a cache of cash in his or in his wife's safety deposit boxes.

[1]. The district court sentenced the taxpayer to imprisonment for one year and one day on each of Counts I through IV, the sentences to run concurrently; the district court imposed a fine of $10,000 on each of Counts V through VIII, for a total fine of $40,000.

While such a defense to a net worth tax evasion case can sometimes destroy the Government's case, *see, e. g., United States v. Bethea*, 537 F.2d 1187, 1189–91 (4th Cir. 1976), the evidence in this case was more than sufficient to negate the existence of such a cash hoard.

The Government examined appellant's income tax returns for the years 1940–1959; the returns showed minimal assets and income insufficient to allow accumulation of a significant cash hoard. *See Holland, supra*, 348 U.S. at 133–34, 75 S.Ct. 127. In addition, the relevant tax returns, beginning with 1960, including the tax returns of Costanzo's Bread, Inc., beginning in 1962, were examined. The Government agents computed the appellant's net worth increase for each year from 1960–1971, including a cash assets assumption highly favorable to the taxpayer.[2] In the period from 1960 to 1971, appellant expended or accumulated $665,047.13 more than his reported income. Other evidence inconsistent with the cash hoard claim showed that Mrs. Costanzo earned only $3100 as secretary of the corporation beginning in 1962; that the taxpayer and his wife received no large inheritances or gifts; and that the taxpayer made eight borrowings from 1960, also borrowed on his insurance policy, and had a chattel mortgage on the trade fixtures placed in his business in 1960. In addition, the evidence showed that an inventory of Mrs. Costanzo's safety deposit box during the investigation revealed contents of $37; no records exist of the contents of the box, or of the taxpayer's deposit box, at earlier times. Although Mrs. Costanzo testified that shortly after 1940 she saw a sizeable cash hoard in a tool box belonging to the taxpayer, the evidence showed that the taxpayer and his wife had had eleven savings accounts and two checking accounts.

The foregoing circumstantial evidence inconsistent with the existence of a cash hoard corroborated the taxpayer's admissions proved by the prosecution. Appellant had stated to investigators that he was "out of cash" as of December 31, 1967, and that he gave his wife only housekeeping money, an admission which negated the possibility that she could have accumulated any substantial amount of money. In view of these admissions, and the Government's corroborating evidence, we think that the evidence was adequate to establish the taxpayer's opening net worth with sufficient certainty.

■ Appellant contends, at least inferentially, that some of the expenditures made during the taxable period could have derived from the earnings of the bakery business in years preceding 1967. The agents proved the amounts of income reported in the 1960–1967 period and properly credited the taxpayer with such amounts. It is true that some of the cash expended after 1967 could have been derived from earlier tax evasion rather than from current income. But it is obvious that this is simply a variation of the "favorite" defense of a cash hoard in existence at the beginning of the period covered by the indictment. *Holland, supra,* 348 U.S. at 127, 75 S.Ct. 127. Proof of such a cash hoard would have to be tendered by the defendant, or at least given to the Government as a lead for investigation, for it would otherwise be beyond the reach of the Government, *Rossi v. United States*, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933). *See United States v. Kiamie*, 258 F.2d 924 (2d Cir.), *cert. denied*, 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958). Once the Government had presented its evidence negating the existence of a cash hoard, *supra*, "the defendant remain[ed] quiet at his peril." *Holland, supra*, 348 U.S. at 139, 75 S.Ct. at 137. If an earlier tax evasion is the defense, it is the defendant who must prove it; otherwise the court and the jury may presume that the defendant acted in accordance with the law in his earlier dealings with the Government.

---

**2.** The taxpayer claimed, during the investigation, that as of 1960 he had kept cash in his safety box, in denominations of bills no higher than $20. The investigators determined that a box the size of the one rented by the taxpayer would hold 2,450 bills when filled to capacity with new bills, and credited the taxpayer with $49,000 in cash as of 1960, the beginning date of the net worth calculation.

In fact, the appellant tried to introduce the reports of the revenue agents who audited Costanzo's Bread, Inc. in 1963 and 1969, with findings that only small changes from the income tax returns were required. If the reports, tendered by the defendant as a true reflection of his affairs, had been allowed into evidence, the 1963 report would have tended to show that the expenditures in the taxable period proved by the Government did *not* have as their source unreported income during the period preceding the taxable period.

■ Appellant argues, nevertheless, that it was error to exclude the agent's reports. Such reports generally have an internal verity which keeps them from necessarily being objectionable hearsay. Fed.R.Evid. 803(8)(C).[3] Though the reports were not hearsay, however, they were not relevant to the issues in this tax evasion prosecution. The reports show only a correspondence between the corporation's records and the returns that it filed, while the Government's case turned on convincing the jury that the corporation's records did not reflect the true receipts of the business. There was no error in this exclusion of irrelevant evidence. In any event, the substance of the reports was elicited upon cross-examination of the agents, and the reports themselves were cumulative evidence which the trial judge could exclude in his discretion.

## II

## PROOF OF A LIKELY SOURCE OF UNREPORTED TAXABLE INCOME

■ In *Holland, supra,* the Supreme Court indicated that in addition to proving an increase in the taxpayer's net worth, the Government was required in that case to prove a likely source of unreported taxable income. 348 U.S. at 137–38, 75 S.Ct. 127.

But the Government is not required to prove a likely source of unreported taxable income in every net worth case; rather, it may either prove a likely source of taxable income or negate any possible source of nontaxable income.

"In *Holland* we held that proof of a likely source was 'sufficient' to convict in a net worth case where the Government did not negative all the possible nontaxable sources of the alleged net worth increase. This was not intended to imply that proof of a likely source was necessary in every case. On the contrary, should all possible sources of nontaxable income be negatived, there would be no necessity for proof of a likely source."

*United States v. Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958) (*per curiam* ).

■ The taxpayer in the present case claimed that the increase in his net worth was only apparent, and in fact resulted from the investment of a pre-existing cash hoard. But the evidence offered by the Government was sufficient to negate the existence of such a hoard, as we have already noted, *supra.* The Government also introduced evidence to negate the receipt of gifts or inheritances by the taxpayer or his wife during the period covered by the indictment. The Government's proof thus went beyond the single source of nontaxable income (the cash hoard) suggested by the taxpayer, and was more than sufficient to negate the receipt of nontaxable income by the taxpayer. *See United States v. Bianco,* 534 F.2d 501, 506 (2d Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *Gatling v. Commissioner of Internal Revenue,* 286 F.2d 139, 144 (4th Cir. 1961). Having negated all possible sources of nontaxable income, the Government was not required to prove a likely source of taxable income. *Massei, supra; United States v. Schipani,* 414 F.2d 1262, 1264–65,

3. Fed.R.Evid. 803(8)(C) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, set-

ting forth . . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

1267 (2d Cir. 1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970). *See also United States v. Ford,* 237 F.2d 57, 63 (2d Cir. 1956), *vacated and remanded for dismissal on grounds of mootness,* 355 U.S. 38, 78 S.Ct. 343, 2 L.Ed.2d 272 (1957); *United States v. Mitchell,* 413 F.2d 181 (7th Cir. 1969). As the Ninth Circuit noted in *Whitfield v. United States,* 383 F.2d 142, 144 (1967):

> "If . . . the prosecution was compelled to relate all the unreported income precisely to the motel operation, then employment of the 'net worth' method of proof would have been unnecessary."

■ The Government, in any event, offered extensive proof that the taxpayer's business was a likely source of unreported taxable income. The evidence showed that Costanzo's Bread, Inc., was a successful business with many sizeable accounts, and was large enough to generate substantial amounts of unreported cash receipts. The corporation *reported* nearly half a million dollars in gross sales in each of the four years in question. The evidence also showed that large amounts of cash were received, that cash receipts were recorded by the taxpayer or his wife, and that the receipts and cash register tapes from which the records were prepared were subsequently destroyed. The taxpayer himself made all of the deposits to the corporate bank account. We see no merit in the taxpayer's

argument that the Government failed to prove that the business was a likely source because it did not prove either the physical production capacity of the bakery or the gross profit percentage of similar businesses in upstate New York.[4] The mistaken assumption underlying this argument is that the Government must show that the bakery was capable of generating the entire amount of the unreported income alleged in the indictment. As we have noted, such proof is unnecessary in this net worth case. The Government's evidence showed, in any event, that the bakery was a likely source of at least a substantial portion of the unreported income charged in the indictment.[5]

### III

### THE GOVERNMENT'S INVESTIGATION

■ The circumstantial nature of the proof relied upon in a net worth tax evasion case led the Supreme Court to indicate that the sufficiency of the evidence to support a conviction should be measured in light of the thoroughness of the Government's investigation of all relevant circumstances.[6] The thoroughness of the Government's investigation of the cash hoard claim has already been reviewed in connection with the opening net worth calculation, *supra.* The Government's investigation covered every circumstance that might have shed light on

---

4. Gross profit percentage is the ratio of gross profits to gross receipts. Given the cost of materials purchased by Costanzo's Bread and the gross profit percentage for bakeries of like size and activity in the region, one conceivably could calculate the gross profit that could be generated by the use of the materials purchased by Costanzo's Bread, although the cost of materials in a bakery business might have very little relationship to the profit ratio. The defense offered no proof of either the prevailing gross profit percentage in the bakery business in the region or the physical production capacity of the bakery. There was also affirmative evidence of the receipt of cash as well as the payment of expenses in cash.

5. It would have been necessary to underreport the gross receipts of Costanzo's Bread by only 8 to 18 percent for the four years in question to generate the *entire* amount of unreported income charged in the indictment.

6. "It is, of course, not for us to prescribe investigative procedures, but it is within the province of the courts to pass upon the sufficiency of the evidence to convict. When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury."

*Holland, supra,* 348 U.S. at 135–36, 75 S.Ct. at 135 (footnote omitted).

the creation or existence of a cash hoard, and the evidence of this investigation was sufficient to negate the claim of a cash hoard on hand as of December 31, 1967, sufficient in amount to account for the expenditures.

The Government's investigation of the purchases of stock in the names of the taxpayer's sons was also sufficient to meet the standards laid down in *Holland*. Some of the stock purchases relied upon by the Government to show the increase in the taxpayer's net worth were made in the names of the taxpayer's sons. The taxpayer admitted to the agents that he had paid for the stock purchases in his sons' accounts. The Government's investigation corroborated this admission by producing evidence from the taxpayer's broker that the taxpayer placed buy orders for his sons' accounts as well as statements by the taxpayers' sons that he had indeed paid for the stock purchased in their names. The Government's proof also showed that Angelo Costanzo, Jr., had an average reported gross annual income of $11,670 in 1965–1971, and that Richard Costanzo, the other son, had an average reported gross annual income of $8,045 in 1965–1971. The purchases in their names amounted to $313,070 for those years. Finally, the Government was able in many instances to show that purchases for the sons' accounts had been paid for by checks from the taxpayer. The evidence produced by this thorough investigation was sufficient to corroborate the appellant's admission that he had bought *all* of the stock in his sons' names.[7]

## IV

## EVIDENTIARY RULINGS AT TRIAL

■ The taxpayer argues that the trial court committed prejudicial error in its rulings on certain evidentiary questions. He urges, first, that it was error to allow a Government witness to testify about the statements by the taxpayer's sons that their stock had been purchased by the taxpayer. These statements were made in the taxpayer's presence, and he concurred in them at the time. Since the statements were offered against the taxpayer, they were admissible under Fed.R.Evid. 801(d)(2)(B). Further, since the taxpayer's own unequivocal admission that he had purchased the stock in his sons' names was properly received into evidence, and sufficiently corroborated, the admission of the sons' statements cannot have been prejudicial.

■ In cross-examining the Government's witnesses defense counsel was allowed to establish that the Government had not used the gross profit percentage calculation during its investigation, and that it had not determined the physical production capacity of the bakery. Additional cross-examination on these two points was not allowed by the trial court, but this line of inquiry went beyond the subjects of the direct examination and was within the court's discretion to exclude. Fed.R.Evid. 611(b). Further, neither cross-examination nor direct evidence on these two points could have aided the taxpayer. Given the Government's proof of unreported income and its negation of all possible sources of nontaxable income, proof of a likely source of taxable income was not necessary, as we have seen. Appellant made no offer to prove through his own witnesses the lack of capacity of the bakery to generate income beyond that reported.

Affirmed.

---

7. The defendant claimed that $250 that he received during the relevant period was the repayment of a loan that he had made earlier to Jerome Walters, and that the Government's investigation of the loan transaction was inadequate. The Government failed to locate Walters, or to ask the defendant's aid in finding him. But the Government's failure to locate Walters or to seek the defendant's help in doing so was brought out fully on cross-examination. Further, the availability to the taxpayer of $250 from a nontaxable source is inconsequential in view of the size of the unexplained increase in net worth proved by the Government. In this criminal prosecution, the Government was required to show only that the taxpayer had willfully evaded payment of taxes and not the exact amount of the income that went unreported or the taxes that went unpaid. *See United States v. Parr*, 509 F.2d 1381, 1385–86 (5th Cir. 1975).