UNITED STATES of America, Appellee,

v.

Antonios KOSKERIDES,
Defendant–Appellant.

No. 868, Docket 88–1417.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1989.

Decided June 14, 1989.

Barbara A. Bailey, New Haven, Conn., for appellee.

Robert M. Davidson, Norwalk, Conn., (Kurt F. Zimmerman, Davidson, Driscoll & Naylor, Norwalk, Conn., of counsel), for defendant-appellant.

Before PIERCE and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

KELLEHER, District Judge.

## INTRODUCTION

Defendant-appellant Antonios Koskerides appeals from the judgment of conviction on three counts of federal income tax evasion in violation of 26 U.S.C. § 7201.

Appellant was sentenced on count one to a term of imprisonment of eighteen months and a fine of $10,000. On count two appellant received a term of imprisonment of eighteen months and a fine of $10,000., sentence to run concurrently with count one. On count three he was sentenced to a term of five years, execution suspended, and five years' probation, to run consecutively with the sentences imposed on counts one and two. The court also imposed on appellant costs of prosecution and special conditions of probation requiring appellant to pay back taxes for the years 1981–83 and to file lawful federal tax returns during the period of probation.

Appellant seeks reversal on the following grounds: (1) the IRS violated its own procedures in its interviews with appellant, and therefore any statements or documents resulting from such interviews should have been suppressed; (2) the district court erred in denying appellant access to handwritten notes of the agent's interviews

* Honorable Robert J. Kelleher, United States District Court for the Central District of California, sitting by designation.

with him and the unredacted special agent's report; (3) the district court erred in admitting three of the government's summary charts into evidence; (4) admission of the testimony of agent Gambino violated hearsay rules; (5) the district court improperly limited appellant's cross-examination of three government witnesses; and (6) the government's net worth computation and proof of willfulness were insufficient. We affirm.

Appellant came to the United States from Greece in 1966 and was naturalized as a United States citizen in 1977. Appellant's native tongue is Greek. Although appellant speaks English, appellant has some difficulty with the language and made some use of the interpreter provided for him at the suppression hearing and at trial.

In 1968, appellant purchased a restaurant in Norwalk, Connecticut which became known as Penny's I. Between the years 1977 and 1980, he purchased several investment real estate properties, including the cluster of shops where Penny's I is located and four residential rental properties in Norwalk. In 1982, appellant purchased a diner in Fairfield, which he remodeled and renamed Penny's II. Appellant then purchased a third diner located in Norwalk in 1983, which became known as Penny's III. The business of these diners was conducted on a strictly cash basis. Based on the net worth plus expenditures method of proof, the evidence established that appellant had unreported taxable income of $141,831.44 for 1981, $220,436.45 for 1982, and $300,-219.47 for 1983. This understatement of income resulted in the payment of only $2,285 in income tax in 1981, payment of no tax in 1982, and none in 1983. The additional tax calculated by the government to be due and owing was $71,561.00 for 1981, $89,879.00 for 1982, and $121,909.68 for 1983.

Appellant's defense at trial was that he received non-taxable funds from relatives and other individuals in Greece. Because Greece has laws strictly limiting the amounts of money that can be taken out of the country, appellant contended that he employed a scheme with various friends and relatives whereby individuals planning to travel to Greece would give U.S. currency to appellant prior to their trips to Greece. Once in Greece, the travelers would receive a like amount in Greek drachmas from appellant's relatives.

The government presented evidence that IRS agents interviewed various individuals in Greece named by appellant as persons from whom he had received funds. In its calculations, the government credited appellant for having received funds from Greece. The government also presented evidence regarding the informal loans within the Greek community and how they would be treated in the net worth calculation. The government also presented evidence that many of the funds received by appellant from Greece were repaid by appellant in a short period of time.

## DISCUSSION

### I. MOTION TO SUPPRESS

■ Appellant contends that the district court erred in denying his motion to suppress his written or oral statements, admissions, confessions or documents obtained in the course of the IRS investigation, along with any other evidence derived therefrom. Appellant argues that the IRS violated its own regulations by its conduct of the initial interrogation of defendant and its failure to inform appellant's accountant, George Aretakis, that it was engaged in a criminal investigation. The district court's findings of fact in ruling on a motion to suppress may not be disturbed unless the findings are clearly erroneous. *United States v. Mast,* 735 F.2d 745, 749 (2d Cir.1984).

The Criminal Investigation Division of the IRS targeted appellant for investigation in 1984. Thereafter, on several occasions in 1984 and 1985, special agents Donald Kramer and Anthony Pavlich interviewed and had other contacts with appellant. The first interview took place on October 24, 1984. On that day, Kramer and Pavlich went to Penny's II, one of the diners operated by appellant. Upon meeting appellant, Kramer introduced himself as a special agent of the IRS Criminal

Investigation Division and presented his credentials to appellant, which appellant viewed. After appellant led Kramer and Pavlich to a booth in the restaurant, Kramer again introduced himself and Pavlich as special agents of the Criminal Investigation Division. Kramer read to appellant the statement of rights from a card known as Document 5661.[1] Appellant responded that he understood and wished to cooperate with the agents. Appellant appeared to comprehend the agent's questions and provided responsive answers to their inquiries in English. Neither at the initial interview nor during any later interview or contact did appellant ask for clarification of his rights or for an interpreter to be present. However, appellant testified that, because his English was "not too good" and he did not understand Kramer's questions, he referred Kramer to his accountant, Aretakis. That afternoon, the agents met a second time with the appellant, who permitted Kramer and Pavlich to inventory the contents of his safe deposit box.

On the same day, Kramer and Pavlich went to the office of appellant's accountant, George Aretakis. They testified that they displayed their credentials and identified themselves as IRS special agents from the Criminal Investigation Division. Pavlich also gave Aretakis a business card which identified him as a special agent with the Criminal Investigation Division. Appellant contends that the agents never informed Aretakis of the true nature of the investigation which had targeted appellant for potential criminal tax charges. Aretakis testified that if he had known of the true nature of the proceedings, he would have called an attorney. The district court found that any misunderstanding on the part of Aretakis as to the nature of the investigation was not a result of any misrepresentation or deception by the agents.

The IRS regulations relied upon by appellant are set forth in the *IRS Handbook for Special Agents* § 342.132. The regulations provide that at the beginning of the first official interview with the subject of an investigation, the special agent will identify himself as a special agent of the IRS, produce his credentials, and inform the subject that one of the functions of a special agent is to investigate the possibility of criminal violations. The agent must then advise the subject that he cannot be compelled to answer any question or submit any information if the answer might tend to incriminate the subject. The subject must also be advised that any statement he makes or any information he turns over may be used against him in a criminal proceeding and that he may seek the assistance of an attorney. If the subject indicates that he wishes to withhold his testimony or records or consult with an attorney, the agent must terminate the interview. If the subject requests clarification of these rights or the purpose of the investigation at any time, the agent must provide an explanation. The regulations also require that the agent may not use trickery, misrepresentation or deception in obtaining any evidence or information.

The district court, in denying appellant's motion to suppress, found that the IRS followed its regulations and that no due process violation occurred. We agree. As noted above, appellant was advised of his rights from the outset by the reading of Document 5661, and he appeared to understand. The record discloses no misrepresentations or deception on the part of the agents. The district court's denial of appellant's motion to suppress was proper.

---

1. Document 5661 reads as follows:

   As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses.

   In connection with my investigation of your tax liability (or other matter) I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S. I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek assistance of any attorney before responding.

   Do you understand these rights?

## II. ACCESS TO HANDWRITTEN NOTES OF INTERVIEWS AND SPECIAL AGENT'S REPORT

Appellant contends that the district court erred in denying access to agent Kramer's handwritten notes of interviews with him and in denying access to the full Special Agent's Report ("SAR"). By pretrial motion, pursuant to Fed.R.Crim.P. 16(a)(1)(A), appellant requested all of his statements obtained by the government during the investigation. After agent Kramer's testimony at the hearing on the motion to suppress and after his testimony on direct examination at trial, the defense requested agent Kramer's handwritten notes of the interviews with appellant and the SAR pursuant to the Jencks Act, 18 U.S.C. § 3500.

The defense was provided with typewritten IRS memoranda of the interviews with appellant prepared after the interviews from handwritten notes. The handwritten notes were preserved by the agent and submitted to the district court for *in camera* inspection. The court compared the handwritten notes with the memoranda of interview and denied disclosure of the notes, finding that everything in the notes was contained in the memoranda given to appellant. The court also found that the notes did not pertain to anything discussed by the agent in his testimony on direct examination.

■ Under Fed.R.Crim.P. 16(a)(1)(A), the government must permit the defendant to inspect and copy or photograph "the substance of any oral statement which the government intends to offer in evidence ·at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent." Here, the government fully complied with Rule 16(a)(1)(A) by providing appellant with the typewritten memoranda of interviews prepared from the agent's handwritten notes. *See, e.g., United States v. Elusma,* 849 F.2d 76, 79 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1570, 103 L.Ed.2d 936 (1989); *United States v. Konefal,* 566 F.Supp. 698, 708 (N.D.N.Y.1983).

In addition, the refusal of the court to order disclosure of the handwritten notes did not violate the Jencks Act. The Jencks Act provides that a defendant in a federal criminal trial, after a government witness has testified on direct examination, is entitled to receive for purposes of cross-examination any written statement of the witness in the government's possession "which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *United States v. Pacelli,* 491 F.2d 1108, 1118 (2d Cir.), *cert. denied,* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974). If the government's representations as to relevancy are challenged, the government must make the disputed statement available to the district court for an *in camera* inspection and ruling. 18 U.S.C. § 3500(c); *see Goldberg v. United States,* 425 U.S. 94, 109, 96 S.Ct. 1338, 1347, 47 L.Ed.2d 603 (1976). The district court's ruling that documents do not contain Jencks Act material cannot be overturned absent a clear showing of abuse of discretion. *United States v. Singh,* 628 F.2d 758, 765 (2d Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). Here, the district court reviewed the handwritten notes *in camera* and determined that the notes did not pertain to anything said by the agent on direct examination. We find no error in the district court's determination.

■ Appellant also argues that he was entitled to the full SAR rather than the redacted version provided by the government, under Fed.R.Crim.P. 16(a)(1)(A) and the Jencks Act. The district court found that the materials relating to the net worth computations of appellant's taxable income and to the computations of tax due and owing were "reports, memoranda, or other internal government documents" under Fed.R.Crim.P. 16(a)(2) and were therefore exempt from discovery.

Rule 16(a)(2) provides that reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case are not subject to disclosure. Since Rule 16 clearly recognizes

"the prosecution's need for protecting communications concerning legitimate trial tactics," *United States v. Pfingst,* 490 F.2d 262, 275 n. 14 (2d Cir.1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), we hold that the district court did not abuse its discretion in ruling that the analysis of tax liability was not discoverable under Rule 16, *see* 2 C. Wright, *Federal Practice and Procedure* § 261 (1982).

Defendant also claims that the entire SAR should have been disclosed under the Jencks Act. The district court conducted an *in camera* inspection of the redacted SAR and the full SAR. The court determined that the redacted SAR was producible under the Jencks Act and ordered it provided to the defense for the purpose of its cross-examination of Agent Kramer. The court also compared the redacted SAR with the full SAR and determined that nothing else contained in the full SAR related to Agent Kramer's direct testimony. The district court's determination, after an *in camera* inspection, that the full SAR need not be disclosed was within the court's discretion. *Singh,* 628 F.2d at 765; *Pacelli,* 491 F.2d at 1118.

## III. ADMISSION OF SUMMARY CHARTS

Appellant claims error in the district court's decision to admit summary charts prepared by the government. We will not overturn the court's decision to admit summary charts in the absence of abuse of discretion. *United States v. Pinto,* 850 F.2d 927, 935 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988) and —— U.S. ——, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988).

Appellant contends that the district court erred in admitting three large charts on which were set out net worth tax computations. Appellant claims that the charts should not have been admitted at trial because they had not been disclosed during pretrial discovery. In its pretrial motions for discovery, appellant requested access to the IRS' net worth computations as well as access to any and all papers, documents or tangible objects which were in the posses-

sion of the government, which were material to the defense, or which were intended for use by the government as evidence at trial. The district court ruled that the actual computations and analysis of appellant's tax liability constituted government reports, memoranda, or other internal documents not discoverable under Rule 16(a)(2). Prior to trial, the defense specifically requested, pursuant to Rules 16(d)(1) and (2), that the court preclude the government from introducing evidence in its case in chief any Rule 16 materials which had not been disclosed. The court denied this request, based upon its prior ruling that the computations were exempt by Rule 16(a)(2). We find no error in the district court's ruling.

■ Appellant also contends that no proper foundation was established for admission in evidence of the three large charts at trial. According to appellant, the primary evidence upon which these exhibits were based was not available for the purpose of testing its accuracy. Summary charts may be admitted upon a proper foundation connecting the numbers on the chart with the underlying evidence. *United States v. Citron,* 783 F.2d 307, 316 (2d Cir.1986). The district court must determine as part of the foundation that the summary charts "fairly represent and summarize the evidence on which they are based." *United States v. O'Connor,* 237 F.2d 466, 475 (2d Cir.1956); *see Citron,* 783 F.2d at 316. Here, that was done by the district court. Moreover, the court instructed the jury that the charts were admitted as summaries and should be disregarded if they did not reflect the facts as shown by the other evidence in the case. We find no error in the district court's decision that a proper foundation had been made for admission of the summary charts.

## IV. TESTIMONY OF AGENT GAMBINO

Appellant contends that the trial court erred in admitting the testimony of agent Vincent Gambino over hearsay objections. Gambino testified about statements made through an interpreter by appellant's father-in-law in Greece concerning funds giv-

en to appellant. Gambino interviewed George Kiriakides and his wife, Eleni, in Greece. Gambino conducted the interview through an interpreter who was employed at the American Embassy in Athens. Kiriakides was deceased and unavailable to appear at the trial. However, Eleni Kiriakides appeared and testified for the government regarding her recollection of the interview. The government made no showing that the interpreter was unavailable.

Appellant makes two claims of error in the admission of Gambino's testimony. First, appellant claims that Gambino's testimony contained multiple hearsay and was inadmissible because the testimony of the interpreter did not qualify as an exception to the hearsay rule. Second, appellant contends that the statements of declarant Kiriakides were inadmissible hearsay. Appellant contends that Kiriakides' statements were crucial to the government's case because the statements were part of the government's evidence that it satisfied its duty to pursue leads to non-taxable sources of funds.

■ When offered for this purpose, the testimony of Gambino about Kiriakides' statements was admissible non-hearsay. Under Fed.R.Evid. 801(c), a statement is hearsay only when "offered in evidence to prove the truth of the matter asserted." When it offered Gambino's testimony to prove that it investigated all leads given by Koskerides to non-taxable income, the government did not seek to prove the truth of Kiriakides' statements, but rather to prove that the interview took place.

Appellant indicates that the government also offered Kiriakides' statements for their truth. Appellant claims that the government offered Kiriakides' statements to disprove appellant's alleged source of non-taxable funds from his relatives in Greece. To the extent that the statements of Kiriakides were offered for the truth of the amount of funds transferred to appellant, the error was harmless. Eleni Kiriakides, who was present at the interview, testified at trial. In addition, the overwhelming evidence against appellant rendered the error harmless beyond a reasonable doubt. *See United States v. Castro*, 813 F.2d 571, 577 (2d Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). In any event, we will examine whether this admission violated hearsay rules.

■ We reject appellant's contention that Gambino's testimony was inadmissible as multiple hearsay. The interpreter was no more than a language conduit and therefore his translation did not create an additional layer of hearsay. *See United States v. Ushakow*, 474 F.2d 1244, 1245 (9th Cir. 1973). The interpreter translated Kiriakides' statements concurrently as made. There is nothing in the record to suggest that the interpreter had any motive to mislead or distort, and there is no indication that the translation was inaccurate. *See United States v. Da Silva*, 725 F.2d 828, 831–32 (2d Cir.1983). In addition, Eleni Kiriakides, who was also present at the conversation, testified at trial and was fully subject to cross-examination.

■ Kiriakides' statements were admissible as statements against interest. Fed. R.Evid. 804(b)(3). The evidence offered by the government satisfies the conditions set forth in *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986):

> A declaration against interest is not excludable as hearsay if three conditions are met: (1) the declarant is unavailable as a witness; (2) the statement is sufficiently contrary to the declarant's pecuniary or penal interests that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) corroborating circumstances indicate that the statement is trustworthy.

In this case, Kiriakides was unavailable as a witness due to his death in 1987. His statements were against his penal interest because they implicated him in a serious crime under Greek law, the expatriation of funds from Greece. Corroboration by Eleni Kiriakides, who was present during the conversation and who testified at trial, indi-

cate that the statements were trustworthy.[2]

■ Appellant further argues that the admission of Kiriakides' statements violated the confrontation clause of the Sixth Amendment because the declarants were unavailable for cross-examination. We disagree. A higher standard of reliability is imposed if the hearsay statements were "crucial" to the government's case. *Stratton*, 779 F.2d at 830 (citing *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970)). Kiriakides' statements were not of this nature. The statements were offered by the government as part of its evidence that the IRS fulfilled its duty to investigate leads to non-taxable sources. Moreover, Eleni Kiriakides, who was also present at the conversation, testified at trial and was fully subject to cross-examination. Kiriakides' statements were also reliable. We have held that "a finding of reliability sufficient to admit a statement against penal interest will normally satisfy Sixth Amendment concerns." *Stratton*, 779 F.2d at 830; *see also United States v. Kusek*, 844 F.2d 942, 951 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988).

## V. LIMITATION OF CROSS–EXAMINATION OF WITNESSES KRAMER, FAUSTINE, AND HIRSCH

Appellant contends that the district court erred in limiting cross-examination of witnesses Kramer, Faustine and Hirsch. Agent Kramer testified on direct examination about appellant's admissions during the course of the investigation and his efforts in following the leads provided by appellant concerning non-taxable sources of funds. The government's charts and the underlying summaries, memos and reports upon which they were based reflected the work of agent Kramer. Although Kramer was the investigating agent on the case, he had retired from the IRS. Agent Faustine, Kramer's supervisor, and agent Genova testified that they had replaced Kramer as case agents and had assumed responsibility for the case. Kramer did not testify about net worth computations. Agent Faustine testified about the net worth plus expenditures computation, and revenue agent Sandel testified concerning the actual calculation of tax due and owing.

■ Defense counsel attempted to cross-examine Kramer regarding the part of his investigation leading to the net worth computations. The district court determined that this area of inquiry was beyond the scope of direct examination and therefore was foreclosed under Fed.R.Evid. 611(a) and (b). Rule 611(b) provides that "cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." The district court has broad discretion to determine the scope of cross-examination. *United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir.1984), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). We will not overturn an exercise of the district court's discretion absent a clear showing of abuse. *Id.* at 1178–79.

Here, we find no such abuse of discretion. Appellant's attempted cross-examination with respect to net worth computations was outside the scope of agent Kramer's direct testimony. In addition, the court indicated that the government would be required to make agent Kramer available if the defense chose to call him as a witness.

Appellant also claims that the district court erred in limiting the cross-examination of two rebuttal witnesses, IRS agent Kenneth Faustine and Michael Hirsch. The government recalled agent Faustine for the limited purpose of testifying regarding adjustments made in the computations for non-taxable funds transferred from Greece. Defense counsel attempted to cross-examine agent Faustine concerning loans which were treated in the net worth computation not as adjustments for funds from Greece, but as personal loans payable. We find no abuse of discretion in the district court's limitation of this line of

---

**2.** Because we conclude that Kiriakides' statement was admissible under Fed.R.Evid. 804(b)(3), we need not discuss Rule 804(b)(5),

the residual exception to the hearsay rule and the other ground upon which the district court admitted the testimony.

cross-examination. On direct, Faustine had not been asked about informal loans from friends or relatives or personal loans payable of any kind.

We also find no abuse of discretion in the district court's limitation of the cross-examination of rebuttal witness Michael Hirsch. Hirsch had testified in the government's case-in-chief about his sale of the Fairfield diner to appellant in 1982. On rebuttal, the government called Hirsch to elicit his gross receipts from that diner for 1981 and 1982. Defense counsel on cross-examination attempted to question Hirsch about the nature of the diner and about the circumstances of the sale to appellant. In view of the limited scope of Hirsch's testimony on rebuttal, the district court's refusal to allow defense counsel to pursue this line of questioning was within its discretion.

There was no error by the district court in refusing to allow defense counsel to make a motion outside the presence of the jury with regard to the cross-examination of Hirsch. Appellant contends that the area sought to be proffered and explored on cross-examination was Hirsch's operations of the diner and Hirsch's personal observations of the diner under appellant's ownership. It is evident that defense counsel's proffer was beyond the scope of Hirsch's limited testimony as a rebuttal witness. The appellant had sufficient opportunity during the government's case-in-chief to question Hirsch concerning these matters.

## VI. SUFFICIENCY OF THE EVIDENCE

Appellant claims that the government's evidence was insufficient to support a conviction for tax evasion. A defendant challenging the sufficiency of the evidence bears a heavy burden. *United States v. Young,* 745 F.2d 733, 762 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). "The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). On appeal, a jury verdict must be affirmed if

"*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The elements of tax evasion under 26 U.S.C. § 7201 are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion. *Citron,* 783 F.2d at 312. Also, the deficiency must be substantial. *Id.* Appellant claims that the government's net worth computation and its proof of willfulness were insufficient.

■ To establish the existence of a tax deficiency, the government used the net worth method of proof. In order to prove a tax deficiency under this method, the government must establish the defendant's opening net worth with reasonable accuracy and increases in net worth for each year in question, excluding any increase which is attributable to reported or known non-taxable income. *United States v. Grasso,* 629 F.2d 805, 807 (2d Cir.1980); *United States v. Sorrentino,* 726 F.2d 876, 879 (1st Cir. 1984). The government must also establish either (1) a likely source of the unreported income or (2) it has negated all possible sources of non-taxable income. *United States v. Massei,* 355 U.S. 595, 595, 78 S.Ct. 495, 495, 2 L.Ed.2d 517 (1958); *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Costanzo,* 581 F.2d 28, 32 (2d Cir.1978), *cert. denied,* 439 U.S. 1067, 99 S.Ct. 833, 59 L.Ed.2d 32 (1979).

■ Appellant contends that the government presented insufficient evidence both of the likely source for appellant's taxable income and of a bona fide attempt by the IRS to verify leads to possible non-taxable sources. We disagree. The government offered evidence that the appellant's business was a likely source of unreported taxable income. Appellant operated two diners as cash businesses. Appellant testified that he exercised almost exclusive control over the businesses and that he made large cash deposits when necessary to cover checks. Testimony also

indicated that appellant's method of keeping his books permitted the possibility of skimming. In addition, Michael Hirsch, the former owner of the Fairfield diner, testified that his gross receipts were $728,042 in 1981, as compared to appellant's gross receipts of $419,036 for his first full year of operation. This evidence, viewed in the light most favorable to the government, is sufficient to establish a likely source of taxable income. *See Costanzo,* 581 F.2d at 33.

The government also sufficiently investigated all reasonable leads to non-taxable sources. The government meets its burden when "it investigates reasonably possible sources of non-taxable income and explores whatever leads the taxpayers or others may proffer," *United States v. Mastropieri,* 685 F.2d 776, 785 (2d Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed. 2d 203 (1982), and thus, by showing that non-taxable income did not derive from those sources, "negat[es] ... [all] reasonable explanations by the taxpayer inconsistent with guilt." *Holland,* 348 U.S. at 135, 75 S.Ct. at 135.

IRS agents interviewed each individual whose name had been provided by appellant, including three individuals in Greece. Agent Kramer testified about his efforts to obtain detailed information regarding the names, dates, and amounts of funds appellant claimed to have received from Greece. Appellant and others testified regarding numerous loans of up to $75,000 made informally between members of the Greek community with no interest charged, no terms of repayment, and no documentation.

The government provided evidence at trial that it took reasonable steps to learn the names, dates, and amounts concerning these loans. Testimony showed that in many instances, the loans were short term and were paid back within a matter of weeks or months. The government took into account in its net worth computation the informal personal loans outstanding and funds from Greece. The government's investigation of non-taxable sources of income was sufficient to negate all reasonable explanations by the taxpayer inconsistent with guilt.

 Appellant also claims that the evidence at trial was insufficient to support a conclusion that he willfully and knowingly evaded income taxes. We disagree. Appellant's pattern of evasion over a three year period, the magnitude of the evasion in this case, and appellant's understanding and involvement in the filing of his income tax returns were sufficient to infer willfulness. *See United States v. Levy,* 449 F.2d 769, 770 (2d Cir.1971); *United States v. Stone,* 770 F.2d 842, 845 (9th Cir.1985).

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.