STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerardo S. PATINO, Defendant-Appellant.†

Court of Appeals

*No. 92–1756–CR. Submitted on briefs December 18, 1992.—Decided May 26, 1993.*

(Also reported in 502 N.W.2d 601.)

†Petition to review denied.

350

351

353

354

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Anthony Ward* of *Ward & Keyes* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J. Gerardo S. Patino appeals from a judgment of conviction for aggravated battery while using a dangerous weapon, contrary to secs. 939.63 and 940.19(2), Stats., and from an order denying his motion for postconviction relief. Patino raises three issues on appeal: (1) the state's use of multilevel hearsay violated Patino's constitutional right to confrontation, (2) certain of the state's cross-examination of Patino and some of the state's final argument were improper and prejudicial, and (3) the trial court improperly considered the absence of a witness in Patino's sentence. We reject Patino's arguments and affirm the judgment and order.

## BACKGROUND FACTS

On April 7, 1991, Patino was involved in a physical confrontation with Sergio Tamayo in the basement of the house where the two resided. Patino was subsequently arrested and charged with attempted first-degree intentional homicide and aggravated battery while using a dangerous weapon for stabbing Tamayo in the neck during the confrontation. The jury acquit-

ted Patino of the attempted murder charge, but found him guilty of the aggravated battery charge. We will recite further necessary facts as we address the appellate issues.

## I. THE TRIAL COURT'S EVIDENTIARY RULING

### A. Facts

Within an hour after the incident, the police obtained a statement from a witness who had been sleeping in the basement at the time of the confrontation. The witness, Jesus Salazar, did not speak English and was interviewed by Officer David May through an English/Spanish translator, Deputy Blanco Aquino. According to Deputy Aquino's translation, Salazar stated that he was sleeping in the basement when he was awakened by an argument between Patino and Tamayo. Salazar stated that after he turned over in his bed and covered his head, he heard Patino exclaim, "I'm going to kill you, you son of a bitch." Salazar stated that he was half asleep when Tamayo fell on him and then onto the floor adjacent to Salazar's bed. Salazar also stated that Patino left the basement holding a knife.

Salazar testified at the preliminary hearing. At this hearing, Salazar's testimony varied in certain respects from his statement to Officer May through the translator, Deputy Aquino. Salazar testified that he heard Patino's statement not while Patino and Tamayo were in the basement, but while the two were fighting on the street outside the residence. Salazar also testified that he was unable to state whether the statement was made by Patino or Tamayo.

At a pretrial evidentiary hearing, the state moved the trial court to admit into evidence Patino's state-

ment as asserted by Salazar and translated by Deputy Aquino for Officer May. The state sought to offer the statement through Officer May because both Salazar and Deputy Aquino were unavailable to testify at the trial.[1] Patino objected to Officer May's testimony as inadmissible multilevel hearsay. He further contended that admitting the statement violated his constitutional right to confrontation.

The trial court held that Salazar and Deputy Aquino were unavailable witnesses pursuant to sec. 908.04(1)(d) & (e), Stats. The court then ruled that Salazar's assertion of Patino's statement was admissible as an excited utterance under sec. 908.03(2), Stats., because the police obtained it while Salazar was still under the stress of excitement caused by witnessing the stabbing. Relying on *State v. Robles*, 157 Wis. 2d 55, 458 N.W.2d 818 (Ct. App. 1990), *aff'd sub nom.*, *State v. Martin*, 162 Wis. 2d 883, 470 N.W.2d 900 (1991), the court also held that Officer May could testify to Salazar's translated statements. The court reasoned that because Deputy Aquino acted as Salazar's speaking agent, his translation to Officer May was to be regarded as Salazar's own statement.

### B. The Law

Patino asserts that the trial court erred in allowing Officer May's testimony describing the interview of Salazar through Deputy Aquino because the testimony involved multiple layers of inadmissible hearsay and violated his right to confrontation.

---

[1] Deputy Aquino was deceased, and Salazar had left the United States and was residing in Mexico.

361

The rights of a criminal defendant to confront the witnesses against him are the same under both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution. *State v. Jenkins*, 168 Wis. 2d 175, 185, 483 N.W.2d 262, 265 (Ct. App.), *cert. denied*, 113 S. Ct. 608 (1992). A constitutional confrontation claim requires that we first address whether the statements are admissible under the rule against hearsay. *State v. Martinez*, 150 Wis. 2d 62, 70, 440 N.W.2d 783, 786 (1989). The constitutional question of confrontation is not reached unless the out-of-court statements are first admissible as either nonhearsay or under recognized hearsay exceptions. *Jenkins*, 168 Wis. 2d at 185–86, 483 N.W.2d at 265. Accordingly, we begin our analysis with the hearsay question.

The trial court's decision to admit or exclude evidence is a discretionary determination that will be upheld on appeal absent a misuse of discretion. *See id.* at 186, 483 N.W.2d at 265. If the trial court's decision is supportable by the record, we will not reverse even though the court may have given the wrong reason or no reason at all. *Id.*

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Section 908.01(3), Stats. Multiple levels of hearsay may be admissible if "each part of the combined statements conforms with an exception to the hearsay rule." Section 908.05, Stats.

## C. Hearsay Analysis

Officer May's testimony embraced three tiers of communication: (1) Patino's statement in Salazar's presence that he was going to kill Tamayo, (2) Salazar's statement to Deputy Aquino relating Patino's statement, and (3) Deputy Aquino's translation to Officer May relating Salazar's rendition of Patino's statement. We discuss these tiers in turn.

### 1. Patino's statement in Salazar's presence.

Salazar's statement about the incident included his overhearing Patino say that he was "going to kill" Tamayo. Patino does not challenge this particular level of hearsay. We address it anyway in the interest of completeness.

We conclude that the evidence qualifies as an admission by a party opponent under sec. 908.01(4)(b)1, Stats.[2] Under the statute, a party's own statement in either an individual or representative capacity is not hearsay when it is offered against the party at trial. *Id.* Here, the matter Patino asserted—that he was "going to kill" Tamayo—was offered by the state against Patino at trial. Patino's statement, made in Salazar's presence and overheard by him, constituted an admission by a party opponent and was admissible under sec. 908.01(4)(b)1 as nonhearsay.

---

[2] Section 908.01, Stats., provides in relevant part:

**(4)** STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

. . . .

(b) *Admission by party opponent.* The statement is offered against a party and is:

1. The party's own statement, in either the party's individual or a representative capacity . . . .

### 2. Salazar's statement to Deputy Aquino.

■

The trial court held that Salazar's statement to the translator, Deputy Aquino, constituted an excited utterance under sec. 908.03(2), Stats. After reviewing the record and the applicable law, we agree.

Section 908.03, Stats., provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(2)** EXCITED UTTERANCE. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

A hearsay statement is admissible under the excited utterance exception if: (1) there was a startling event or condition, and (2) the declarant made the statement relating to the event or condition while "under the stress of excitement caused by the event or condition." *Martinez*, 150 Wis. 2d at 72, 440 N.W.2d at 787.

As regards the first element, we are persuaded that Tamayo's stabbing constituted a "startling event." Salazar testified at the preliminary hearing that when Patino and Tamayo came into the basement both appeared "very drunk" and that Patino told him "they had been fighting." Salazar stated that he fell asleep shortly after the two arrived but was awakened when Tamayo fell on him. After being awakened, Salazar saw Tamayo lying on the floor adjacent to his bed and Patino with his right hand raised about chin level clenching a knife. Salazar testified that he was "nervous" and that after Patino left the basement he immediately called the police. Officer May testified

that when he arrived on the scene Tamayo was lying on the basement floor in a pool of blood. He further testified that at the scene Salazar appeared very excited.

We are likewise persuaded that Salazar's statement to Deputy Aquino an hour later related to the "startling event" and that the statement was made while he was "under the stress of excitement caused by the event." The time lapse between the startling event and the making of the statement is a factor in determining whether the statement is admissible as an excited utterance. *State v. Johnson*, 153 Wis. 2d 121, 131 n.8, 449 N.W.2d 845, 849 (1990). However, time is measured by the duration of the condition of excitement rather than mere time lapse from the event described. *Id*. at 131–32 n.8, 449 N.W.2d at 849. That the statement was not made within a few minutes of the event is not controlling, nor is the fact that it was not volunteered but made in response to questions. *Bertrang v. State*, 50 Wis. 2d 702, 707, 184 N.W.2d 867, 870 (1971). The significant factor is the stress or nervous shock acting on the declarant at the time of the statement. *Johnson*, 153 Wis. 2d at 132 n.8, 449 N.W.2d at 849.

After being awakened, Salazar saw Tamayo's body on the floor adjacent to his bed and Patino standing nearby clenching a knife in his hand. Salazar told one officer, Officer Ruben Silguero, that he grabbed Patino's right hand in an effort to prevent him from stabbing Tamayo again. Salazar testified at the preliminary hearing that he was "nervous" and that he immediately called the police to report the stabbing

365

after Patino left carrying the knife. Officer May testified that when he arrived at the scene he could tell from the way Salazar was motioning with his arms and speaking that Salazar was "very excited" and that something had happened. Officer May testified that Tamayo's body was located on the basement floor shortly after his arrival, and that Salazar was transported from the scene to the police department for an interview shortly thereafter. Within an hour to an hour and fifteen minutes after his arrival on the scene, Officer May interviewed Salazar through Deputy Aquino. Based upon the circumstances surrounding the event and the testimony received from both Salazar and Officer May, we conclude that the trial court did not err by concluding that Salazar's condition of excitement or upset state of mind existed when he made his statement to Deputy Aquino. The court did not misuse its discretion in admitting Salazar's statement to Deputy Aquino as an excited utterance under sec. 908.03(2), Stats.

3. Deputy Aquino's translation to Officer May.

Finally, we address the statements Salazar made to Officer May through the translator, Deputy Aquino. Relying on *State v. Robles*, 157 Wis. 2d 55, 458 N.W.2d 818 (Ct. App. 1990), the trial court concluded that Deputy Aquino's translation did not create an additional level of hearsay because the translation was directly attributable to Salazar as his own statement.

In *Robles*, we considered whether an interrogator's testimony was inadmissible hearsay when the interrogator testified about certain admissions against interest made by the defendant through a police translator. Following the majority view, we held that the translator acted merely as a language conduit for the

defendant, and that there was a "testimonial identity" between the defendant and the translator such that the translator's statement to the interrogator was directly attributable to the defendant as his own statement. *See id.* at 61–63, 458 N.W.2d at 821–22. As such, we concluded that the defendant's statements to the interrogator were admissible nonhearsay under sec. 908.01(4)(b), Stats.[3] *See id.* at 63, 458 N.W.2d at 822.

The majority of courts that have considered this issue have done so in the context of the situation before us in *Robles*: where the defendant, as a party to the action, makes the statement. As we noted in *Robles*, these courts have taken the view that because the translator may be viewed as an agent of the defendant, the translation is attributable to the defendant as his or her own admission as a party opponent. *See, e.g., United States v. Nazemian*, 948 F.2d 522, 525–28 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 107 (1992); *United States v. Beltran*, 761 F.2d 1, 9 (1st Cir. 1985); *United States v. Alvarez*, 755 F.2d 830, 859–60 (11th Cir. 1985), *cert. denied*, 474 U.S. 905 (1985) and 482 U.S. 908 (1987); *United States v. Da Silva*, 725 F.2d 828, 831–32 (2d Cir. 1983). *See also People v. Torres*, 262 Cal. Rptr. 323, 329 (Cal. Ct. App. 1989); *State v. Felton*,

---

[3] Section 908.01, Stats., provides in relevant part:

(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

. . . .

(b) *Admission by party opponent.* The statement is offered against a party and is:

. . . .

3. A statement by a person authorized by the party to make a statement concerning the subject, or

4. A statement by the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship . . . .

412 S.E.2d 344, 353–54 (N.C. 1992); *Robles*, 157 Wis. 2d at 61–63, 458 N.W.2d at 821–22.

In contrast to the defendant in *Robles*, here Salazar is not a party to the action—he is a witness. Therefore, the hearsay exemption for party admissions under sec. 908.01(4)(b), Stats., cannot apply. To this limited extent, we disagree with the trial court's ultimate basis for admitting Salazar's statement under *Robles*. Nonetheless, we are persuaded that the conceptual basis for our conclusion in *Robles* is applicable.

Some courts, whether the statement at issue be that of a defendant or a witness, have concluded that, except in unusual circumstances, a translator is no more than a language conduit and therefore his or her translation does not create an additional level of hearsay. *See, e.g., United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991); *United States v. Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989). *See also United States v. Ushakow*, 474 F.2d 1244, 1245 (9th Cir. 1973) (testimony of translator admissible where acting as a mere conduit).[4]

In *Koskerides*, 877 F.2d at 1134–35, the Second Circuit considered whether it was error to allow a government agent to testify about statements that were made through a translator by a nonparty witness concerning the defendant's criminal activities. At the time of the trial, neither the witness nor the translator appeared to testify; the witness was deceased and unavailable, and the translator was not called and no showing was made that he was unavailable.

---

[4] Older Wisconsin law in civil cases follows the same theme. *See Nadau v. White River Lumber Co.*, 76 Wis. 120, 134–35, 43 N.W. 1135, 1140 (1890), and *Blazinski v. Perkins*, 77 Wis. 9, 12, 45 N.W. 947, 947–48 (1890).

The Second Circuit rejected the defendant's contention that the agent's testimony constituted inadmissible multiple hearsay. Noting that the witness' statements were translated concurrently as made and that nothing suggested the translator had any motive to mislead or distort or that the translation was otherwise inaccurate, the court held the translator "was no more than a language conduit and therefore his translation did not create an additional level of hearsay." *Id.* at 1135. Finding that the witness' statements were conceptually made directly to the agent, the court held the statements admissible through the agent's testimony as statements against the witness' interest under FED. R. EVID. 804(b)(3).[5] *See Koskerides*, 877 F.2d at 1135.

We acknowledge that in contradiction to the federal court's opinion in *Koskerides*, there exists the view that admitting testimony of statements made to a witness through a translator is restricted to cases where the translated party is a party to the action. *Wigmore on Evidence* states:

> (2) Where a witness on the stand is asked to testify to the *words* of A *uttered out of court,* as translated to him by M interpreting between them, the witness is not qualified by personal knowledge of A's utterances . . . and may not testify; the interpreter M is the only qualified witness. But if A, whose utterances are to be testified to, is a party opponent, then he may be regarded as having made M his agent to translate, and thus M's translations are admissions . . . usable against A.

---

[5] FEDERAL R. EVID. 804(b)(3) is similar to sec. 908.045(4), Stats.

6 J. WIGMORE, EVIDENCE § 1810, at 376 (J. Chadbourn rev. 1976) (emphasis in original; footnote omitted). *Cf.* 2 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 263, at 155 (14th ed. 1986). However, we are unable to discern any reason why the justification for admitting the testimony where the translation emanates from a party to the action should not exist with equal force where the translated party is a witness, or how it supports limiting the rule solely to cases where the translated statement is that of a party to the action.[6] Neither the commentators nor the early state cases where this distinction is found offer any explanation;[7] all simply state the rule with little or no analysis.

We conclude that this unexplained distinction does not withstand legal scrutiny and we decline to follow it. We find the Second Circuit's view in *Koskerides* the better rule and we adopt it here. Absent a motive to mislead, distort or some other indication of inaccuracy, *see Koskerides*, 877 F.2d at 1135; *Robles*, 157 Wis. 2d at 63, 458 N.W.2d at 822, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons

---

[6] This, of course, assumes that the witness' statement qualifies for admission under a recognized hearsay exception.

[7] Many early state courts took the position that the testimony was inadmissible hearsay because the witness necessarily testified to what the translator declared the other party said. *See, e.g., Kalos v. United States*, 9 F.2d 268, 271 (8th Cir. 1925); *Indian Fred v. State*, 282 P. 930, 933–34 (Ariz. 1929); *Garcia v. State*, 68 N.W.2d 151, 158–59 (Neb. 1955); *Scotto v. Dilbert Bros., Inc.*, 33 N.Y.S.2d 835, 836 (N.Y. App. Div. 1942); *Gulf, C. & S.F. Ry. Co. v. Giun*, 116 S.W.2d 693, 695–96 (Tex. Ct. App. 1938).

themselves without creating an additional layer of hearsay. Like any other out-of-court statement, the translated statements are admissible—if qualified by an exception to the hearsay rule—without calling the translator as a witness.

Here, Deputy Aquino translated Salazar's statements to Officer May concurrently as made. Officer May was present as an integral part of the entire episode from both a visual and an aural standpoint. Patino points to nothing in the record to suggest that Deputy Aquino had any motive to mislead or distort. Nor does Patino offer any indication that the translation was inaccurate at the time it was effected. Nor is it fatal that Deputy Aquino was a police officer or that he was selected by the law enforcement agency conducting Salazar's interview. *See Da Silva*, 725 F.2d at 831–32; *Robles*, 157 Wis. 2d at 61–63, 458 N.W.2d at 821–22. In fact, another Spanish speaking officer testified that Deputy Aquino spoke Spanish very fluently. That Salazar's testimony at the preliminary hearing differed from his translated statement to Officer May goes to the weight to be given the translation by the jury, not to the admissibility. *See State v. Arroyo*, 166 Wis. 2d 74, 79, 479 N.W.2d 549, 551 (Ct. App. 1991). Insofar as Salazar and Deputy Aquino are to be treated as identical for hearsay purposes, and having already found that Salazar's statement constituted an excited utterance, we conclude that the trial court properly allowed Officer May's testimony describing Salazar's translated statement.

## D. Confrontation Analysis

As noted earlier, the admissibility of an out-of-court statement under an exception to the hearsay rule

does not end our analysis. We must also consider whether Officer May's testimony describing Salazar's statements through Deputy Aquino violated Patino's constitutional right to confrontation.

In *Ohio v. Roberts*, 448 U.S. 56, 65–66 (1980), the Supreme Court ruled that the confrontation clause ordinarily requires the prosecution to establish the unavailability of the declarant and the indicia of reliability of a hearsay statement as prerequisites to admissibility. *See also State v. Hanna*, 163 Wis. 2d 193, 198, 471 N.W.2d 238, 241 (Ct. App. 1991) (acknowledging the "well-accepted two-step approach" to determine whether hearsay evidence satisfies the confrontation clause: (1) the declarant must be unavailable, and (2) the evidence must bear some indicia of reliability). More recently, however, the Court held that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois*, 112 S. Ct. 736, 743 (1992).

We consider first whether Patino was deprived of his right to confrontation by the admission of his statement in Salazar's presence as an admission by a party opponent under sec. 908.01(4)(b)1, Stats. In *Bourjaily v. United States*, 483 U.S. 171 (1987), a district court admitted an out-of-court statement of a nontestifying coconspirator against the defendant, reasoning that the statement fell within the hearsay exemption for coconspirators under FED. R. EVID. 801(d)(2)(E), the identical federal counterpart of sec. 908.01(4)(b)5. The Supreme Court upheld the defendant's conviction against a sixth amendment challenge, reasoning that "no independent inquiry into reliability is required when the evidence 'falls within a firmly rooted hearsay

372

exception' " like that for coconspirators. *Bourjaily*, 483 U.S. at 183 (quoting *Roberts*, 448 U.S. at 65). The Court has since applied the same reasoning to the "spontaneous declaration" and "medical examination" exceptions to the hearsay rule. *See White*, 112 S. Ct. at 742.

We see no reason to distinguish between the hearsay exemption for coconspirators and the exemption for personal admissions by a party opponent. The exemption for personal admissions is equally rooted in our jurisprudence. *See On Lee v. United States*, 343 U.S. 747, 756 (1952) (admissions against interest are provable against defendant as an exception to the hearsay rule); *Miles v. United States*, 103 U.S. 304, 311–12 (1881) (declarations and admissions of plaintiff in error were admissible in evidence against him and properly considered by jury for their truth); *United States v. Wood*, 39 U.S. (14 Pet.) 430, 443 (1840) ("a man's own acts, conduct, and declarations, where voluntary, are always admissible in evidence against him."). Moreover, because the statement is properly viewed as Patino's own, there can be no confrontation clause issue since Patino cannot claim that he was denied the opportunity to confront himself. *See Nazemian*, 948 F.2d at 525–26. Accordingly, we conclude the confrontation clause is satisfied with respect to the admissibility of Patino's statement under sec. 908.01(4)(b)1, Stats.

Focusing on the admissibility of Salazar's translated statement as an excited utterance, we likewise conclude that Patino was not denied his constitutional right to confrontation. The United States Supreme Court has indicated that "spontaneous declarations" are made in contexts that provide "substantial guaran-

tees of their trustworthiness" and that the excited utterance exception, as embodied in FED. R. EVID. 803(2), is firmly rooted for confrontation purposes. *White*, 112 S. Ct. at 742 & n.8. "[A] statement that qualifies for admission under a firmly rooted hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* at 743. Our supreme court has likewise ruled that the excited utterance exception is firmly rooted. *Martinez*, 150 Wis. 2d at 77, 440 N.W.2d at 789. Thus, our traditional confrontational inquiry of whether Salazar's out-of-court statement to Officer May has the requisite indicia of reliability or particularized guarantees of trustworthiness need not be made. *See Jenkins*, 168 Wis. 2d at 200–01, 483 N.W.2d at 272.[8]

Finally, we consider Deputy Aquino's translation of Salazar's answers to Officer May. We have already held that this communication does not create an additional level of hearsay. Therefore, we do not analyze this level of communication under hearsay law. Nonetheless, we must be satisfied that the circumstances surrounding Deputy Aquino's translation provided sufficient guarantees of trustworthiness to protect Patino's confrontation rights. We are so satisfied for two reasons already addressed in our previous discussion: (1) under the *Robles\Koskerides* analysis, Deputy Aquino's statements are functionally treated as Salazar's statements; and (2) Patino points to nothing which suggests that Deputy Aquino had any motive to

[8] We thus disagree with both the trial court's conclusion and Patino's contention that for purposes of the confrontation clause, the excited utterance exception embodied in sec. 908.03 (2), Stats., is not firmly rooted in our jurisprudence.

mislead, distort or otherwise render an inaccurate translation.

Therefore, we are satisfied that at all three levels, be they hearsay or otherwise, Officer May's testimony did not violate Patino's confrontation rights.

## II. PROSECUTORIAL QUESTIONING AND COMMENTS

### A. Facts

At trial, the state's witnesses included Aida Amie and Angela Lee, both of whom testified that after the stabbing Patino spoke to them and stated that he had stabbed a person because the person wanted to have sex with his cousin's wife. The defense did not cross-examine either of these witnesses.

Patino testified in his own behalf, offering a self-defense theory. He admitted on cross-examination that he spoke with Amie and Lee after the stabbing but denied making the statement. Noting that Patino had heard both Amie's and Lee's testimony the day before, the prosecutor asked Patino why he "didn't . . . arrange to have questions asked of them whether or not . . . these incidents occurred." The trial court sustained defense counsel's objection and advised the jury to disregard the question.[9]

The prosecutor then asked Patino why Amie "would come to court and make up a story like she did yesterday?" Patino's counsel objected on the grounds

---

[9] Patino's counsel did not specify the grounds for the objection on the record. However, we note that following a discussion off the record, the trial court sustained the objection. We assume counsel particularized the grounds for the objection during this discussion.

that the question assumed a fact not in evidence and called for speculation. The court overruled this objection. Patino's answer speculated that somebody told Amie to lie. The prosecutor then asked Patino why Amie would lie. To this question, the court sustained an objection.[10]

During closing arguments to the jury, the defense argued that Patino was acting in self-defense when Tamayo was stabbed. The defense disparaged Officer May's testimony describing Salazar's statement after the stabbing because the officer had failed to question Salazar whether Patino had been acting in self-defense. In his rebuttal argument to the jury, the prosecutor noted this criticism and asserted that defense counsel "had an opportunity to question Jesus Salazar himself" at the preliminary hearing. The defense objected, arguing that the jury be advised that the confines of the preliminary hearing did not allow him to probe Salazar's credibility. The trial court agreed with defense counsel, sustaining the objection and stating before the jury that "[w]hat was asked and who was asked at a prior proceeding is not relevant for purposes of what this jury has to decide."

---

[10] These two trial court rulings appear inconsistent. Without more, the initial question did appear to call for speculation and Patino's answer confirmed that he was speculating. Generally, the role of a lay witness (even a defendant) is to testify regarding facts—not to opine on another witness' credibility. Therefore, we think the trial court's initial ruling permitting Patino to speculate was wrong and its second ruling putting an end to the speculation was right.

Regardless, Patino does not challenge the trial court's evidentiary ruling made at the time of trial. Instead, he challenges the postconviction rulings made by the trial court as to this line of questioning.

The prosecutor then responded, "Well, [defense counsel] has his reasons for not asking those questions." Again sustaining the defense's objection in the presence of the jury, the trial court stated that "[w]hether [defense counsel] had reason or not again is irrelevant."

Patino argues that the prosecutor's cross-examination of him about defense counsel's limited questioning of two trial witnesses and the prosecutor's final argument comment about defense counsel's limited questioning of Salazar at the preliminary hearing deprived him of a fair trial. Specifically, Patino contends that these prosecutorial tactics implicated his right to remain silent, his attorney-client privilege, and shifted the state's burden of proof to him. We address each argument in turn.

### 1. The Prosecutor's Cross-Examination

We address first the prosecutor's cross-examination of Patino about defense counsel's limited questioning of the state's witnesses Amie and Lee.

We make an important preliminary observation. The trial court *sustained* Patino's objections to certain of the questions which Patino now asserts entitles him to a new trial. Improper but unanswered questions are generally not sufficient error to require reversal on appeal. *State v. Edwardsen*, 146 Wis. 2d 198, 210, 430 N.W.2d 604, 609 (Ct. App. 1988). Having prevailed with the trial court on these objections, Patino took no further steps to correct any perceived additional harm. Specifically, he did not move for a mistrial. Where an objection is sustained, absent plain error, a motion for a mistrial must be made in order to preserve the issue for appeal. *Neely v. State*, 86 Wis. 2d 304, 319, 272

N.W.2d 381, 388 (Ct. App. 1978) (*Neely I*), *aff'd*, 97 Wis. 2d 38, 292 N.W.2d 859 (1980) (*Neely II*).

■

Here, Patino apparently was satisfied with the court's ruling sustaining the objections. Assuming *arguendo* that Patino had grounds to ask for more (i.e., a curative instruction or a mistrial), he asked for nothing more. *See State v. Baker*, 16 Wis. 2d 364, 368, 114 N.W.2d 426, 428 (1962). Thus, we deem Patino's appellate issue waived as to certain of the questions.[11] However, since the state does not argue waiver, and since the trial court also overruled one of the objections, we also address Patino's arguments on the merits.

■

As to the right to remain silent, Patino waived this privilege by choosing to put forth his version of the facts and his reliability as a witness. His voluntary offer of testimony upon any fact constituted a waiver as to all other relevant facts, and the prosecution was permitted to cross-examine him with the same latitude as would be exercised in the case of an ordinary witness. *Neely II*, 97 Wis. 2d at 46–47, 292 N.W.2d at 864–65. Patino cannot be heard to complain that he had a right to be free from cross-examination on matters raised by his own testimony after he voluntarily took the stand in his own behalf. *See Brown v. United States*, 356 U.S. 148, 156 (1958). Thus, even if the prosecutor's questions were objectionable on other grounds, they were not a violation of Patino's right to remain silent.

---

[11] Patino makes no plain error argument.

As to the attorney-client privilege, the questions did not directly probe what Patino and his attorney shared in the confidence of the attorney-client privilege. More importantly, Patino made no claim or showing that his attorney's decision not to question either witness resulted from a privileged discussion between he and his attorney.

Nor, we conclude, did the questions suggest to the jury that Patino carried the burden of proof to establish his innocence. A prosecutor's comment by questioning or argument about the shortcomings of the defense evidence does not, *per se*, constitute a shifting of the burden of proof. *See United States v. Sblendorio*, 830 F.2d 1382, 1390–91 (7th Cir. 1987), *cert. denied*, 484 U.S. 1068 (1988). Here, the trial court advised the jury at the commencement of the trial and before deliberations that the state had the burden to establish every fact necessary to constitute guilt, to disregard entirely any unanswered questions that the court did not allow to be answered, and to draw no inferences from sustained objections. We may presume the jury follows the instructions given by the trial court. *Edwardsen*, 146 Wis. 2d at 210, 430 N.W.2d at 609. Moreover, Patino contemporaneously objected to both questions; the trial court sustained the objections and advised the jury to disregard the initial question. When curative and admonitory instructions are given we may conclude that any possible prejudice has been erased. *See id.*

As to the one question which did require Patino to speculate about why Amie would lie, we see no basis upon which to reverse, even assuming the court's ruling was wrong. This was but one question in a lengthy

379

trial. We see nothing else in this trial which suggests that the jury was otherwise misled as to the state's burden of proof. Most importantly, the trial court correctly instructed the jury as to the state's burden of proof both at the commencement of the trial and before jury deliberations. We conclude that this isolated question did not affect any substantial right of Patino. Section 805.18(1) & (2), Stats.

### 2. The Prosecutor's Closing Argument

Patino contends the same errors occurred when the prosecutor commented during closing argument about defense counsel's limited questioning of Salazar at the preliminary hearing.

As with the preceding issue, the trial court sustained Patino's objection. Following this ruling, Patino requested no further relief by way of a mistrial. We conclude that the same reasoning which applies to sustained objections to improper questions should apply to sustained objections to improper argument: absent plain error, a motion for a mistrial is necessary in order to preserve the issue for appeal. *See Neely I*, 86 Wis. 2d at 319, 272 N.W.2d at 388.

Alternatively, we also reject Patino's argument on the merits. The prosecutor's comments neither referred to Patino's failure to testify at the preliminary hearing nor to any conversation he may have had with his defense counsel. To the contrary, the comments referred to Salazar and the line of questioning put to him at the preliminary hearing.

As to Patino's burden of proof argument, the state contends that the prosecutor's arguments were permissible because they were "invited" by defense counsel's closing statements. We agree.

380

In *Sblendorio*, the Seventh Circuit considered arguments analogous to the one advanced by Patino here. *See Sblendorio*, 830 F.2d at 1390–91. There, the prosecutor's closing argument emphasized the defendants' failure to call several witnesses, suggesting to the jury that the failure supported an inference that the witnesses would not have supported the defendants' version of events. The defendants contended the remarks were improper and required a new trial because they shifted the burden of proof. *Id.* at 1391.

The court noted that the defendants' burden-shifting claim was an offshoot of the rule disallowing a prosecutor's comment which invites the jury to infer guilt from a defendant's decision not to testify. *Id.* at 1391 (citing *Griffin v. California*, 380 U.S. 609 (1965)). The court disagreed, however, that a comment on a defendant's failure to call a witness necessarily implicated the defendant's privilege or shifted the burden of proof. The court explained:

> The defendant's decisions about evidence other than his own testimony do not implicate the privilege, and a comment on the defendant's failure to call a witness does not tax the exercise of the privilege. It simply asks the jury to assess the value of the existing evidence in light of the countermeasures that were (or were not) taken. The inferences come from the evidence before the court. Arguing inferences is standard business among lawyers, which *Griffin* does not forbid. . . . Unless the prosecutor or judge implies that the defendant's failure to testify is itself evidence (or a basis of an adverse inference), *Griffin* is inapplicable.
>
> . . . .
>
> The comment [to observe that the defendant could produce a witness if he wished] does not alter the

> burden of proof or penalize the exercise of a constitutional right. Unless the prosecutor indirectly invites an inference based on the defendant's own silence, he may pursue evidentiary inferences for what they are worth. . . . The prosecutor's response is not "invited error" . . . but is an accurate piece of information combined with a legitimate argument. The jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the strategy and evidence.

*Id.* at 1391, 1393–94 (citations omitted). The court concluded it was permissible for the prosecutor to: (1) imply that the failure of the defendant to present available evidence (other than the defendant's testimony) in opposition to the government's witnesses supported an inference that the government's witnesses were reliable, and (2) reply to an argument by the defense that the absence of a witness counted against the prosecution's evidence. *Id.* at 1392.

We deem the Seventh Circuit's approach sensible and we expressly adopt it. Here, the prosecutor's comments were in response to defense counsel's statements which criticized the investigating officers for not asking Salazar whether Patino was defending himself when Tamayo was stabbed. The prosecutor was countering defense counsel's assertion that Salazar would have corroborated Patino's self-defense claim if asked about it by the investigating officers or at the preliminary hearing. In this context, we conclude that the prosecutor was entitled to address whether the evidence truly supported Patino's theory of defense. As such, Patino did not suffer an improper shifting of the burden of proof.

Alternatively, even if we were to conclude that the comments were error, we would hold them harmless. We will not reverse for error as to any matter of procedure unless, after an examination of the entire proceeding, it shall appear that the error complained of has affected the party's substantial rights. Section 805.18(2), Stats. As to this latter aspect, an error is harmless in a criminal case if there is no reasonable possibility that the error contributed to the conviction. *State v. Pettit*, 171 Wis. 2d 627, 638–39, 492 N.W.2d 633, 639 (Ct. App. 1992).

The prosecutor's comment occurred as an isolated incident and the trial court immediately sustained the defense's objections, stating before the jury that what was asked by defense counsel at the preliminary hearing was not relevant for purposes of the jury's deliberations. There was no request by the defense for a curative instruction regarding the statement after the court's ruling. And, as previously noted, the trial court instructed the jury both at the commencement of the trial and before deliberations that the state had the burden to establish every fact necessary to constitute guilt and that counsels' remarks were not evidence.

We are thus convinced that if any error was couched in the prosecutor's isolated comment, such error was harmless.

### III. IMPROPER SENTENCING FACTOR

Patino's final argument is that the trial court improperly considered Salazar's absence as a relevant sentencing factor.

## A. Facts

At sentencing, the trial court noted the seriousness of the offense and that incarceration was necessary to protect the public and to ensure that Patino received the proper rehabilitative treatment. While discussing the seriousness of Patino's offense, the court stated that Salazar's departure to Mexico and absence at trial showed a lack of respect for the judicial system. The court added that "I say that recognizing that there are significant cultural differences that this man has. That there are significantly different attitudes and understandings and perceptions that he may have because of his background; but again, that doesn't excuse the violence." The court sentenced Patino to seven years' imprisonment.

The trial court conceded at the hearing on Patino's postconviction motion that it had considered Salazar's absence at the sentencing.

## B. Analysis

Sentencing is left to the discretion of the trial court and appellate review is limited to determining whether there was a misuse of that discretion. *State v. J.E.B.*, 161 Wis. 2d 655, 661, 469 N.W.2d 192, 195 (Ct. App. 1991), *cert. denied*, 112 S. Ct. 1484 (1992). In reviewing a sentence to determine whether discretion has been abused, we will presume that the trial court acted reasonably, and the defendant has the burden to show some unreasonable or unjustifiable basis in the record for the sentence. *See id.* Unjustifiable bases for a sentence include irrelevant or improper considerations. *Id.*

The primary factors the trial court should consider are the gravity of the offense, the character of the offender, and the need to protect the public. *Id.* at 662, 469 N.W.2d at 195. The court may also consider the defendant's personality, character and social traits. *See id.* The weight to be given each factor is within the court's discretion. *Id.*

In passing sentence, the trial court addressed each of the primary factors, but relied chiefly on the seriousness of the offense. The court noted that Patino was a mature adult from an impoverished, difficult background, and that he was illiterate and had virtually no education. The court agreed that he had virtually no opportunity for advancement in the United States, but stated that the affliction did not excuse his propensity for violence as demonstrated by this incident and his prior contacts with the police. The court stated that it was disturbed that Salazar went to Mexico and was unavailable to testify at the trial, but that it made this statement recognizing Patino's cultural background evinced different attitudes, understandings and perceptions. Finally, the court stated Patino's cultural differences did not excuse the violence.

At Patino's postconviction hearing, however, the court further explained its reference to Salazar's absence in a different tack:

> As to the absence of Mr. Salazar from the trial, and I corrected myself, I think first I said he fled to Mexico and then I corrected myself and said well, he went to Mexico, that was a factor I considered. I don't think it was an improper factor. He's a relative of this defendant. He was present at the time of the preliminary hearing, and he was served with proper subpoena, I believe, for the trial, and absented him-

self from the court's jurisdiction nonetheless. I mention that as a fact. I don't think I placed any undue weight on it, and I don't think it was an improper factor to address at the time of sentencing.

Here, we do not accept the trial court's conclusion that because Patino and Salazar are related, Patino arranged for Salazar's absence at trial. Nonetheless, we are satisfied from the record of the sentencing hearing that the court properly exercised its discretion when sentencing Patino.

The sentencing record reveals that when the court mentioned Salazar's absence, it simply referred to Salazar's absence as an example of conduct which, like Patino's propensity for violence, exemplified cultural differences. No specific emphasis was given to the absence; what was significant was that cultural differences or not, Patino's violence was inexcusable. The court's remark was an isolated statement made in the course of properly examining Patino's personality, character and social traits which demonstrated his propensity for violence. Furthermore, the fact that Patino was sentenced to a term slightly less than half of that which could have been imposed lends support to the court's statement that little if any weight was placed upon Salazar's absence. Although improper, Salazar's absence was not significant to the sentence.

*By the Court.*—Judgment and order affirmed.