STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles BARNES, Defendant-Appellant.†

Court of Appeals

*No. 95–1831–CR. Submitted on briefs May 13, 1996.—Decided June 25, 1996.*

(Also reported in 552 N.W.2d 857.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard L. Zaffiro* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Diane M. Nicks*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J. Charles Barnes appeals from a judgment of conviction after a jury trial for vio-

lating § 941.29(2), STATS., felon in possession of a firearm.

Barnes claims two instances of trial court error entitling him to either a new trial or resentencing: (1) his constitutional right to a fair trial was violated when the trial court allowed the State to supply elements of the charged offense through the use of leading questions suggesting answers to a child witness; and (2) the trial court erroneously exercised its discretion in sentencing by penalizing him for exercising his right to a jury trial.

Because the trial court did not erroneously exercise its discretion regarding the manner in which the child witness was questioned and because the trial court did not erroneously exercise its sentencing discretion, we affirm.

## I. BACKGROUND

On July 16, 1994, Milwaukee Police Officer Donald Brown was dispatched to the area of 30th and Clybourn Streets in the City of Milwaukee because of a report of a man with a gun. This report emanated from an observation made by ten-year-old Lourdes Correa. Brown interviewed Correa. She described the possessor of the gun as a bald-headed black male, six feet two inches tall, 200 pounds, wearing a tank top and beige pants. After interviewing Correa, Brown observed an individual who matched this description. The individual was identified as Barnes. Barnes was accompanied by a juvenile, Oliver Cathey. After brief questioning about the gun and a pat-down of Barnes, both men were released.

Shortly thereafter, Brown observed Cathey back in the same general area where he had originally been stopped. Suspicious of Cathey's activities, Brown

stopped him intending to perform a pat-down for the missing gun. Cathey told Brown that Barnes had given him the gun the police officer was looking for but that Cathey had returned the gun to Barnes. Brown then searched the immediate area, located the gun, observed Barnes close by, and arrested both him and Cathey. At Barnes's trial the State presented three witnesses: Brown, Correa and Cathey. Cathey had already received one year juvenile probation for possessing a handgun as a result of this incident. The jury convicted Barnes of the charge and he now appeals.

## II. DISCUSSION

*A. Leading questions.*

Barnes claims the trial court erred in allowing the State to direct leading questions to a ten-year-old child witness, which suggested answers crucial to proving the State's case. The trial court allowed the questions because of the age of the witness.

### Standard of Review

Whether a challenged question is truly leading and suggestive, and whether the circumstances justify a leading and suggestive question is a matter of trial court judicial discretion. *State v. Sarinske*, 91 Wis. 2d 14, 46, 280 N.W.2d 725, 740 (1979). We will not reverse a discretionary determination as long as the trial court considered the relevant facts, applied the proper law, and reached a rational determination. *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74, 79-80, *cert. denied,* 510 U.S. 845 (1993).

## Legal Framework

Although the practice of allowing leading or suggestive questions to be directed to child witnesses is well recognized, there are no reported cases in Wisconsin that directly address this very sensitive area of concern.[1] Accordingly, we provide a brief look at the legal framework relevant to leading questions.

Section 906.11(3), STATS., provides: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony." This provision is a subsection of § 906.11, STATS., entitled "**Mode and order of interrogation and presentation,**" which also provides:

> **(1)** CONTROL BY JUDGE. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment.

Generally speaking, three bases are given for discouraging the use of leading questions on direct examination:

> [F]irst, that the witness is presumed to have a bias in favor of the party calling him; secondly, that the

---

[1] *Proper v. State*, 85 Wis. 615, 627, 55 N.W. 1035, 1039 (1893) and *Hardtke v. State*, 67 Wis. 552, 554, 30 N.W. 723, 724 (1886), are occasionally referenced during discussions on this subject, but neither decision offers much assistance as to how a trial court exercises its discretion when confronted with the problem, and both cases were decided long before the present version of § 906.11, STATS., was enacted. *See* Sup. Ct. Order, 59 Wis. 2d R1, R185 (1973).

party calling a witness, knowing what that witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case; and thirdly, that a witness intending to be entirely fair and honest might assent to a leading question which did not express his real meaning.

G. Stephen Denroche, *Leading Questions*, 6 CRIM L.Q. 21, 22 (1963).

The fourth circuit stated the concern behind leading questions even more succinctly in *United States v. Durham*, 319 F.2d 590, 592 (4th Cir. 1963), explaining that: "The evil to be avoided is that of supplying a false memory for the witness." *See also* 3 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 611-76-84 (1995). The suggestive nature of the interrogatory has no stock form.[2] "The tenor of the desired reply can be suggested in any number of ways, as, for example, by the form of the question, by emphasis on certain words, by the tone of the questioner or his non-verbal conduct, or by the inclusion of facts still in controversy." 3 WEINSTEIN ET AL., ¶ 611-77, 78.

In spite of the amorphous form of the guarded-against "evil" usage of the leading question, it is not altogether forbidden under our statute, the Federal Rules § 611(c) or the Model Code of Evidence Rule 105(g). There are occasions when leading questions may be not only necessary, but desirable. Instances when leading questions have been allowed include: when the witness is immature, timid or frightened; when the testimony relates to introductory or undis-

---

[2] To say that a leading question is easily identified if a question only calls for a "yes" or "no" answer is to unreasonably reduce the problem to simplicitude. W. H. Enfield, *Direct Examination of Witnesses*, 15 ARK. L. REV. 32, 35 (1960); 3 JOHN H. WIGMORE, EVIDENCE, §§ 772, 780 (Chadbourn rev. ed. 1970).

puted matter; when the witness's recollection is exhausted; when the witness is in such a physical or mental condition that he or she ought to be spared the effort of responding in extended answers; or when the witness is called to disprove prior testimony of another witness. *See* 3 WEINSTEIN ET AL., ¶ 611-79, 80.[3] Moreover, when § 906.11(3), STATS., is applied to a child witness, an exception to the undesirability of leading questions on direct examination has been historically recognized. Judicial Council Committee's Note, § 906.11(3), Wis. Rules of Evidence, 59 Wis. 2d R191, Federal Rule of Evidence § 611(c), Notes of Advisory Committee (1972); *United States v. Castro Romero*, 964 F.2d 942, 943-44 (9th Cir. 1992). Thus, there exists a rationale for placing the application of § 906.11(3), STATS., in the discretionary authority of the trial court.

## Analysis

Having reviewed the relevant legal framework, we now examine Barnes's claim to determine whether the trial court erred in allowing the State to ask leading questions of ten-year-old Correa. Barnes argues that the leading nature of these questions supplied the element of identification and that without that element, the State's case would have failed. We affirm the trial court for three reasons: (1) the trial court did not erroneously exercise its discretion in concluding that because of Correa's age, it would allow the leading questions; (2) the record demonstrates that Correa was a timid and frightened witness, and because of this (and her young age), the leading questions were neces-

---

[3] *See also Jordan v. State*, 93 Wis. 2d 449, 472, 287 N.W.2d 509, 519 (1980); *Rausch v. Buisse*, 33 Wis. 2d 154, 169, 146 N.W.2d 801, 809 (1966).

sary to develop her testimony; and (3) there is no evidence that the leading questions supplied a false memory.

From a form standpoint, it appears that defense counsel decided the State's questions were just too leading and suggestive and finally objected to the form of the questions. From a substantive standpoint, because of the lack of exactitude at the trial level, it is impossible to ascertain precisely what questions trial counsel felt were objectionable for the purposes of possible appeal. Thus, we could dispose of this issue by applying waiver, *see* § 901.03(1)(a), STATS., but eschew this approach to help enunciate and amplify the principals of § 906.11(3), STATS.

When defense counsel objected to the form of the questions, the trial court acknowledged the leading nature of the questions but overruled the objection because of Correa's age, stating that the methodology was "appropriate." The trial court's reasoning is consistent with the recognized exception of allowing leading questions during direct examination of a child witness, and hence was not an erroneous exercise of discretion. We acknowledge Barnes's concern that "infancy is not an open door to leading questions." Nevertheless, directing such questions to a child witness has become a well-recognized exception to the prohibition on using leading questions during direct examination. *See Castro-Romero*, 964 F.2d at 943-44. The young age of the witness often makes it necessary to use leading questions in order to develop their testimony.

Although Correa's age was the only factor the trial court explicitly referred to in its ruling, we infer from the ruling, and the record as a whole, that the trial court based its decision on the fact that under the cir-

cumstances of the case, the leading questions were necessary in order to develop Correa's testimony. From a reading of the direct examination of Correa by the State, it is not unreasonable to conclude that the series of questions was used by the State to develop a child witness's testimony, rather than to supply a false memory.[4]

---

[4] (District Attorney):

Q. You say your name is Lourdes?
A. Lourdes.
. . . .
Q. All right. I want to have you think about July 16th of 1994. Do you remember that day?
A. Yes.
Q. Okay. On that day, were you on a porch with some friends of yours?
A. Yes.
Q. Was that a porch or house, was that at 3015 West Clybourn?
A. Yes.
Q. Did you see something while you were on that porch around 5:00 p.m. or so in the evening, or late afternoon?
A. Yes.
Q. What did you see?
A. I saw a man with a gun running.
Q. Okay. You saw a man with a gun doing what?
A. He was running down the street.
Q. Do you remember what this man looked like?
A. No.
Q. Was he tall or short?
A. I don't remember.
Q. Do you remember what you told the police?
A. No.
Q. Do you remember talking to the police?
A. Yes.
Q. Do you remember talking to an Officer Brown that you saw standing out in the hallway a few minutes ago?
A. Yes.
Q. And do you remember telling him what you had seen?
A. No.
Q. You don't remember talking to him? What was this man doing with the gun?

In addition, it is undisputed that Correa was subpoenaed as a witness, but failed to appear resulting in

A. He was—

(Defense Counsel): Your Honor, I'm going to object to that question, because the witness already answered she doesn't remember.

The Court: She said she saw a man walking with a gun, so I think the question is proper. Overruled.

The question is, what was the man doing with the gun?

The Witness: He was pointing

The Court: What?

. . . .

The Witness: Pointing it straight.

(District Attorney):

Q. Who was he pointing at?
A. At a lady. . . . .
Q. Okay. Were you there when the police came?
A. Yes . . . .
Q. Do you remember what kind of shirt the man you saw with the gun had on?
A. Yes.
Q. What kind of shirt was it?
A. Tank top. . . . .
Q. Do you remember if he had hair or if he was bald?
A. No.
Q. Do you remember telling the police he was bald?
A. No. Yes.
Q. So you told the police he was bald?
A. Yes.
Q. Do you remember telling police that he was tall?

(Defense Counsel): . . ., I'm going to object to the form of the questions as excessively leading on direct examination.

The Court: Leading, but she's only ten years old, so I think that's appropriate to lead a child witness. . . .

(District Attorney):

Q. Do you remember telling police he was like six feet tall?
A. Yes.
Q. Okay. And do you remember telling them that he had a beige pants and a tank top on?
A. Yes.

142

the trial court issuing a bench warrant for her appearance. When she was brought to court, in response to the court's inquiry, she indicated that she was "a little" nervous. It is evident from the record that Correa was not a willing witness nor comfortable in her role in testifying as to what she observed. These additional facts, together with her young age, further support the trial court's ruling to allow the questions because they demonstrate that Correa was immature, timid and frightened.

In reviewing this issue, we note that the trial court is in the best position to evaluate the circumstances under which the ten-year-old was testifying. Barnes's trial counsel originally objected to certain questions relating to Correa's conversations with Officer Brown because she said she didn't remember what happened; yet with a little reasonable prodding by the trial court she was able to respond, and the State was able to develop observations made by Correa at the crime scene. When trial counsel again objected, this time for improper form, the trial court having had the opportunity to assess the circumstances under which Correa observed the criminal activity and her reluctance to appear in court, concluded that the exception to the rule of discouraging leading questions should appropriately prevail.

█

Barnes further argues that allowing the leading questions improperly denied him substantial constitutional rights to confrontation, due process and a fair trial. We are not persuaded. In *State v. Williamson,* 84

Q. Do you see the person in court that you saw with the gun?
A. Yes. . . . .
Q. Can you tell me what he has on today?
A. Orange.

Wis. 2d 370, 380, 267 N.W.2d 337, 342 (1978), our supreme court declared that the impropriety of allowing a leading question to stand has constitutional implications only if prejudicial. Based on the record, we conclude that allowing the leading questions did not prejudice Barnes. When the testimony of Cathey, Officer Brown's crime scene investigation testimony, and Correa's unobjected to testimony is viewed in its totality, even in the absence of the challenged leading questions, the jury verdict could not have been otherwise. Cathey's testimony alone was sufficient to secure a conviction. Cathey testified that Barnes had a gun on the date, time and place in question, and that Cathey took the gun from Barnes at Barnes's request to hide it so the police would not find it. Accordingly, we reject Barnes's claim.

*B. Sentencing.*

Barnes also claims that the trial court erroneously exercised its sentencing discretion when it sentenced him to an eighteen-month prison term, to be served consecutively to an unrelated prison term. Barnes asserts the trial court utilized an unreasonable or unjustifiable basis for the sentence it imposed when it considered the inconvenience two youthful witnesses and the system itself had been put through when he exercised his right to a jury trial. Thus, he claims he is entitled to resentencing without consideration of those factors.[5] We conclude that the trial court properly exercised its sentencing discretion.

---

[5] Barnes points to the following statement of the trial court to support his claim he was sentenced for improper factors:

A young Cathey, the juvenile, had to come down and testify. The young ten-year old girl, who appeared to this court to be very

144

## Standard of Review

Sentencing is a function of trial court discretion. *State v. Harris*, 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). We are reluctant to interfere with a trial court's sentence because it has a great advantage in considering the relevant factors and the demeanor of the defendant. *Id.* There is a presumption that a trial court acted reasonably when sentencing. *Id.* Thus, to demonstrate an erroneous exercise of sentencing discretion, the defendant must show some unreasonable or unjustifiable basis in the record for the sentence imposed. *State v. Echols*, 175 Wis. 2d 653, 681-82, 499 N.W.2d 631, 640, *cert. denied*, 510 U.S. 889 (1993).

## Analysis

When sentencing, the trial court must consider the following three factors: (1) the gravity of the offense; (2) the character and rehabilitative needs of the offender; and (3) the need for protection of the public. *State v. Sarabia*, 118 Wis. 2d 655, 673, 348 N.W.2d 527, 537 (1984). The significance of each factor, however, in the total sentencing process lies solely within the sentencing court's discretion as demonstrated by the record. *State v. Patino*, 177 Wis. 2d 348, 385, 502 N.W.2d 601, 616 (Ct. App. 1993).

When considering the three primary factors, the sentencing court may also take into account: the

---

frightened when she was on the witness stand, had to come down and testify.

Police officer spent a couple of days down here in a trial that would otherwise have been unnecessary.

So, I have to take all those factors into consideration, and obviously, the time it took to pick a jury. . . .

vicious and aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention. *State v. Borrell*, 167 Wis. 2d 749, 773-74, 482 N.W.2d 883, 892 (1992).

From our review of the sentencing transcript, we are satisfied that the trial court properly exercised its discretion in sentencing Barnes. The trial court noted the type of offense committed by Barnes involved a gun, a juvenile companion, and the consumption of alcohol. The occurrence itself took place in a neighborhood setting affecting a ten-year-old girl and her two young friends who observed the sequence of events. Lastly, the trial court observed that Barnes has "many unmet needs, both academic, social and personal referring specifically to his drug and alcoholic dependency and low IQ." Although Barnes claims he received a consecutive rather than a concurrent sentence for exercising his right to a jury trial, we reject this assertion because on two separate occasions during the sentencing, the trial court assured Barnes that his sentence would not be made more severe for electing to go to trial. In the context of the entire sentencing process, we find nothing to support Barnes's claim that the consecutive sentence imposed was unreasonable or unjustified.

*By the Court.*——Judgment affirmed.